Linda A. KUHN, Plaintiff-Respondent,

v.

ALLSTATE INSURANCE COMPANY, Defendant-Appellant,†

RUSK COUNTY DEPARTMENT OF SOCIAL SERVICES,
Nominal-Defendant.

Court of Appeals

*No. 93–0344. Submitted on briefs September 20,
1993.—Decided December 28, 1993.*

(Also reported in 510 N.W.2d 826.)

†Petition to review filed.

On behalf of defendant-appellant, the cause was submitted on the briefs of *Terrance E. Davczyk* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *D. J. Weis* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Allstate Insurance Company appeals an amended summary judgment allowing its injured insured, Linda Kuhn, to twice stack her automobile policy coverage, once under the underinsured motorist (UIM) coverage and again under the uninsured motorist (UM) coverage. Kuhn's damages arose out of an auto accident with an insured tortfeasor, Catherine Schlewitz, whose insurer paid its liability limits of $25,000 to Kuhn. The circuit court construed Allstate's UM/UIM coverage to provide both the $50,000 UM and the $50,000 UIM benefits for a single accident, and, because the policy covered two autos, applied stacking principles to each benefit separately for a total of $200,000. The court also stacked separate $2,000 medical pay benefits for an additional $4,000 and awarded Kuhn prejudgment interest of 12% from the date of the accident. Allstate moved the circuit court to reconsider. The court denied the motion and amended the judgment granting Kuhn $10,000 in attorney fees.

We conclude that: (1) Allstate's policy does not provide both UM and UIM benefit for a single accident; (2)

Allstate's reducing clause is invalid and contrary to public policy because it renders the UM coverage illusory; (3) prejudgment interest from the date of the accident is barred by prior case law; (4) attorney fees pursuant to sec. 806.04(8), Stats., are not available; and (5) Allstate violated the provisions of sec. 809.23(3), Stats., prohibiting the citation of unpublished decisions of this court. We therefore reverse those parts of the amended summary judgment inconsistent with this opinion and remand for reentry of judgment consistent therewith.

The facts giving rise to this appeal are as follows. The plaintiff, Kuhn, was standing at the rear of her auto parked alongside the highway when an auto driven by Catherine Schlewitz ran into her. As a result of the accident, Kuhn suffered severe injuries, leading to the amputation of her left leg. Her medical bills alone exceeded $100,000. Schlewitz' insurer, General Casualty Insurance Company, did not contest liability and paid Kuhn its liability policy limits of $25,000.[1] The Kuhns owned two vehicles insured by an Allstate policy at the time of the accident, and paid separate premiums for the respective coverage pertaining to each vehicle.

Incorporated into an affidavit in support of summary judgment filed by Kuhn's attorney is a copy of the relevant policy together with an affidavit from an Allstate officer indicating that the Kuhns' coverage included "SS Uninsured Motorists" benefits with limits

---

[1] Allstate does not dispute that Kuhn's injuries arose out of the use of her motor vehicle. Further, it tacitly concedes that Kuhn's total damages exceed the total insurance coverage, even if it is "double stacked." In view of the fact that Kuhn's medical bills alone exceeded $100,000, we assume for purposes of resolving the issues on appeal that this is not a disputed fact.

of $50,000 per person and $100,000 per accident, and also coverage for "SU Underinsured Motorists" with similar limits. The policy's table of contents refers to "Uninsured Motorists Insurance (Coverage SS)." Prior to Kuhn's accident, however, Allstate amended its policy to include within its definition of an uninsured motorist an underinsured motorist. The amendment to the definitions in the policy stated:

> 5. Part V, Uninsured Motorists Insurance, is amended as follows:
>
> A. The following paragraph is added to the provision entitled **"An uninsured auto is . . . ."**:
>
> **An uninsured auto is . . .**
>
> (5) an underinsured **motor vehicle** which has bodily injury liability protection in effect and applicable at the time of the accident, but less than the applicable limit of Uninsured Motorist Coverage shown on the declarations page.

Also included in the documents furnished by All-state to counsel was the "IMPORTANT NOTICE," presumably issued contemporaneously with the amendment to the policy. This notice advises that the policy includes "Coverage SS" for "Uninsured Motorists" including "Underinsured Motorists who are drivers with liability limits less than your Coverage SS limits. This applies only if your SS Coverage limits are greater than the minimum limits required by law in Wisconsin."[2]

---

[2] The notice states in part:

Coverage SS pays you . . . for bodily injury caused by legally liable **Uninsured Motorists**, who are:

- drivers with no liability insurance or liability bond,

A copy of a declarations sheet introduced as an exhibit at the summary judgment hearing shows that the Kuhns paid separate $12 premiums for "SS Uninsured Motorists" coverage on each vehicle as well as separate $3 premiums for medical payments coverage on each, but discloses no separate premium for "SU Underinsured Motorists." Allstate, maintaining that Kuhn could stack UM/UIM coverage once but not twice, paid $52,000.[3]

- drivers who have liability limits less than the required minimum limits for liability insurance in Wisconsin,

- hit and run drivers (when there is physical contact and the identity of the owner or operator of the vehicle is unknown),

- drivers insured by insurance companies which become insolvent or which deny coverage:

- **Underinsured Motorists** who are drivers with liability limits less than your Coverage SS limits. This applies only if your Coverage SS limits are greater than the minimum limits required by law in Wisconsin.

[3] Allstate asserts that it has paid $52,000, $2,000 in medical payment benefits and $50,000 in underinsurance motorist coverage benefits. The amended judgment dated January 4, 1993, awards $152,000 plus prejudgment interest of 12% from December 22, 1989, the date of the accident, and indicates: "Judgment was granted in the sum of $204,000 plus interest; however, Allstate Insurance Company, to date, has paid $57,000.00. The amount of the Judgment has been reduced accordingly." Thus there is a $5,000 discrepancy between Allstate's assertion in its brief and the language in the amended judgment. Because the parties do not discuss it, we defer to the circuit court on remand for resolution of any error in this respect.

We also note that Allstate first applied its reducing clause to subtract $25,000 from each policy's $50,000 UIM coverage before stacking the remaining $25,000, for total UIM coverage of $50,000. Allstate acknowledges that if the UIM coverages are stacked before the reducing clause is applied, it would owe

Kuhn sued Allstate seeking a total recovery of $204,000 (less the $52,000 paid), representing the $50,000 per person limits on each of the two insured vehicles stacked twice, once under the UM coverage and again under the UIM coverage, and $4,000 for the separate $2,000 medical payment coverage for each vehicle.

The parties cross-moved for summary judgment indicating there were no factual issues for trial. The circuit court granted Kuhn's motion and awarded her $204,000, plus 12% interest accruing from the date of the accident. Allstate moved for reconsideration of that portion of the trial court's decision that awarded both UIM and UM benefits, as well as the court's decision that failed to give effect to the reducing clause. The court denied Allstate's motion in all respects, and, pursuant to *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), awarded Kuhn $10,042.57 in attorney fees. Other relevant facts are set forth later herein.

---

$75,000 rather than $50,000. Further, Allstate did not stack its medical payment coverage in its computation. Kuhn does not address this issue. Because we hold that the reducing clause is invalid, we do not resolve which method is proper. We note, however, that *Wood v. American Fam. Mut. Ins. Co.*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989), without discussing the matter, appears to have approved the insured's proposal to stack the coverage first, thereby deducting the tortfeasor's liability payment only once.

Finally, because Allstate does not brief the issue, we conclude without further discussion that Kuhn is entitled to stack her medical pay benefits for which she paid two premiums.

## UNINSURED/UNDERINSURED MOTORIST BENEFITS

Kuhn contends that the Schlewitz vehicle that struck Kuhn was both underinsured and uninsured, entitling her to double benefits. Further, under the stacking principle, Kuhn contends that each of the two coverages must be stacked. We first address the issue of double benefits.

The interpretation of words or clauses in an insurance contract is a question of law this court decides independently of the trial court's decision. *Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 744, 456 N.W.2d 570, 572 (1990). This construction is controlled by the same rules of construction as are applied to contracts generally. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). "[T]he test is . . . what a reasonable person in the position of the insured would have understood the words to mean. *Id.*

Kuhn bases her claim for double benefits upon Allstate's reference to coverage for "SS Uninsured Motorists" as well as "SU Underinsured Motorists," coupled with the fact that nowhere in the policy, prior to the "IMPORTANT NOTICE," is "SU Underinsured Motorists" coverage further explained.

Contrary to Kuhn's contention, we see no ambiguity sufficient to create double benefits. If a reference in Allstate's records to "SU Underinsured Motorist" coverage without further explanation created an ambiguity, it was effectively resolved by the amendment to the policy.

Kuhn argues that the failure in the notice to separate the various definitions of an uninsured motorist

with disjunctives creates multiple benefits. We disagree. The policy plainly means to provide alternate coverage. It would be entirely unreasonable for an insured to read the policy to provide that the other driver's vehicle, covered by $25,000 of liability insurance, is somehow both uninsured and underinsured. We conclude that a reasonable person in the position of the insured would read the policy as a statement of alternatives. Kuhn is therefore covered only once under the UM/UIM provisions of the policy. Allstate does not contest Kuhn's right to stack the coverages for the two vehicles.[4]

## THE REDUCING CLAUSE

We next turn to the question of the efficacy of Allstate's reducing clause, which provides:

> If the loss involves the use of an underinsured auto, the limit of this coverage will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured auto, including partial payments made by an insolvent insurer.

---

[4] "Stacking" is a term used in insurance cases "when the same insurer issues multiple policies and the insured seeks to aggregate the coverage from each of the policies." *West Bend Mut. Ins. Co. v. Playman,* 171 Wis. 2d 37, 39-40 n.1, 489 N.W.2d 915, 916 n.1 (1992). Stacking insurance policies to aggregate coverage is allowed even where, as here, there is only a single insurance policy, as long as the insured pays separate premiums for two or more vehicles under the policy. *See id* at 40-41, 489 N.W.2d at 916. There is no difference for stacking purposes between underinsured and uninsured motorist coverage. *Id.* at 42, 489 N.W.2d at 917. The Kuhns paid separate premiums for their two vehicles insured by Allstate.

Allstate contends that the $25,000 liability coverage from the tortfeasor is therefore subtracted from Allstate's $50,000 UM coverage as to each vehicle, and the resulting $25,000 is then stacked. We reject its contention and conclude that the reducing clause renders the purported $50,000 coverage illusory and contrary to public policy.[5]

This court recently declared an underinsurance coverage reducing clause illusory in *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993). In that case, the injured underinsured plaintiff had $25,000 UIM coverage and the tortfeasor carried $25,000 liability coverage. Despite the unambiguous definition of an underinsured motorist as one whose "limit for bodily injury liability is less than the limit of liability for this coverage," *id.* at 269, 500 N.W.2d at 355-56, we concluded that: "Because [the insured] has paid a premium for UIM coverage under which no benefits will ever be paid, the coverage is illusory and against public policy." *Id.* at 271, 500 N.W.2d at 357.

We recognize that the illusion created in *Hoglund* is different from the illusion created by Allstate. The difference, however, is only a matter of degree. In the former, the insured injured by an underinsured motor-

---

[5] The Allstate policy defines an uninsured motorist to include an underinsured motorist. Under such a scheme, it is possible that Wisconsin law applicable to uninsured motorists rather than underinsured motorists applies. If so, then the reducing clause is also invalid under the analysis in *United Fire & Cas. Co. v. Kleppe*, 174 Wis. 2d 637, 498 N.W.2d 226 (1993) (reducing clause is void because it was unavailable to the tortfeasor for whom UM insurance substitutes). This alternative ground for reaching the same result reached here was used in *Sobieski v. Farmers Ins. Exchange*, 181 Wis. 2d 324, 510 N.W.2d 796 (Ct. App. 1993).

ist will receive no UIM payments. In the latter, Allstate's insured will receive some but never all of the $50,000 coverage. An illusion is a deception, intentional or unintentional, the attribution of more or less to something than is actually the case. Webster's Third New Int'l Dictionary 1127 (Unabr. 1976).

The result we reach here finds some support in language used by our supreme court in *Wood*. In *Wood*, the insured had UIM coverage of $100,000 on each of two vehicles and the tortfeasor had liability coverage of $25,000. Although *Wood* rejected the reducing clause as ambiguous, a factor arguably not applicable here, *Wood* did not end its discussion of the clause's validity with that determination. *Wood* went on to state:

> Accepting the [insurer's] position . . . that the [reducing clause] under a UIM policy should be reduced by payments made from the underinsured's driver's liability policy, the [insurer] will *never* pay the policy limits of its UIM policies. UIM coverage is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused. . . . [U]nder the [insurer's] position, an underinsured liability limit is an illusion because an insured will never be entitled to recover up to that limit . . . .

*Id.* at 653, 436 N.W.2d at 600 (citations omitted; emphasis in original).[6]

*Wood* suggests yet another reason why the coverage is illusory where *some* but never all of the coverage is paid: Reducing UIM benefits from the total damages

---

[6] The quoted discussion incorporates for emphasis the hypothetical situation where the insured has only $25,000 UIM coverage and will receive nothing at all in Wisconsin if the tortfeasor is covered by the required $25,000 liability coverage.

sustained by the insured is consistent with the purposes of UIM coverage as announced in previous cases. That purpose is "to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to *fully compensate* the victim for his or her injuries. *Id.* at 654, 436 N.W.2d at 600 (emphasis added). The touchstone of any coverage determination is the reasonable expectation of the insured. *Carrington v. St. Paul Fire & Marine Ins. Co.*, 169 Wis. 2d 211, 226, 485 N.W.2d 267, 273 (1992). Is it reasonable for the insured, who is sold $50,000 limits of underinsured motorist coverage, to expect never to qualify for the stated limits? We think not.

Allstate relies upon *Smith v. Atlantic Mut. Ins. Co.*, 151 Wis. 2d 542, 444 N.W.2d 465 (Ct. App. 1989), *aff'd on other grounds, Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), upholding a reducing clause similar to this one. That case, however, expressly declined to address the issue of illusory contracts. *Id.* at 548 n.6, 444 N.W.2d at 467 n.6. We conclude that a representation that there is $50,000 in UIM coverage that will never be paid is illusory. Allstate must provide what a reasonable insured would expect. Allstate is entitled to subtract the Schlewitz liability payment from Kuhn's total damages and not from the stacked $50,000 coverage that she purchased.

### INTEREST ON THE JUDGMENT

The circuit court awarded Kuhn 12% interest on the amended judgment from the date of the accident, concluding that her claim for damages was liquidable, that is, readily determinable. First, we have rejected that part of Kuhn's claim seeking increased policy lim-

465

its through "double stacking" of the UM/UIM coverage. Even if Kuhn were successful in pursuing her entire claim, the imposition of prejudgment interest is contrary to *Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 405 N.W.2d 327 (1987). That court declined to adopt the insured's equitable arguments, including those proposed by the amicus, The Wisconsin Academy of Trial Lawyers. The proposal would require an insurance company to pay interest on its policy limits when it was reasonably likely that the damage sought would exceed the policy limits. We need not address the issues anew because *Nicholson*, 137 Wis. 2d at 608, 405 N.W.2d at 338, noted that a divided supreme court in *Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 350 N.W.2d 127 (1984), had already refused to change the rule and left the subject to the legislature. We therefore reverse that part of the amended summary judgment that awarded prejudgment interest.

## ATTORNEY FEES

When the circuit court rejected Allstate's motion to reconsider, it awarded Kuhn her reasonable attorney fees of $10,000 incurred in contesting the claim. The court grounded its decision on *Elliott*. In that case, the supreme court approved the award of costs, including fees pursuant to sec. 806.04(8), Stats., which provides:

> Supplemental relief. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefore shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or

decree, to show cause why further relief should not be granted forthwith.

*Elliott* was a declaratory judgment action brought by the insurer in response to a claim by a third person, and the insurer was seeking exoneration from a duty to defend on grounds that the claims were not covered by the insurance policy. Kuhn did not seek a declaratory judgment, and *Elliott* is not applicable for that reason alone. The American Rule does not afford recovery of attorney fees to a successful litigant except in instances not applicable here.

## CITATION OF UNPUBLISHED COURT OF APPEALS OPINION

Kuhn seeks a sanction for Allstate's reference to an unpublished decision of this court in its brief relating to the issue of "double stacking."

Section 809.23(3), Stats., provides:

> An unpublished opinion is of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of res judicata, collateral estoppel, or law of the case.

After citing a decision of a Wisconsin circuit court in another case, Allstate refers to the unpublished decision of this court affirming the circuit court. The brief then states:

> Allstate feels it appropriate to at least inform the Court that, in affirming . . . it has previously dealt with this precise issue, so that the Court may, if it chooses, consult the same authorities in connection with rendering the instant decision.

In response to Kuhn's challenge, Allstate argues that it neither recited the language or content from our unpublished decision nor attached a copy to its brief. It also suggests that it would be inappropriate to cite the reasoning from a circuit court decision without advising this court that we had affirmed it on appeal.

██ Section 809.23(3), Stats., permits reference to circuit court decisions. *Brandt v. LIRC*, 160 Wis. 2d 353, 359, 466 N.W.2d 673, 675 (Ct. App. 1991). While a circuit court decision is neither precedent nor authority upon which this court may base its decision, many of them are highly persuasive and helpful for their reasoning.

On the other hand, Allstate's invitation to this court to consider its unpublished decision, or even the naked reference to it, violates both the letter and the spirit of sec. 809.23(3), Stats. The adverse party may well be compelled to search out and review the decision. The 1978 Judicial Council Notes to this statute observe:

> The trend toward nonpublication of opinions is nationwide and results from the explosion of appellate court opinions being written and published. Many studies of the problem have concluded that unless the number of opinions published each year is reduced legal research will become inordinately time-consuming and expensive.

██ While there may be no unanimity on the validity of the rule, it remains the law. We therefore impose a sanction of $100 for Allstate's violation.

In conclusion, Kuhn is entitled to stack her $2,000 medical payment coverage as well as her $50,000 cov-

erage available under the UM provision of her policy. The reducing clause is not enforceable because Kuhn's total damages exceed the total of the stacked benefits together with the liability payment from General Casualty. The award of prejudgment interest and attorney fees are reversed. Allstate must pay a sanction of $100 for citing an unpublished court of appeals decision.

Because this decision results in a judgment approximately double the amount Allstate voluntarily paid and approximately half that sought by Kuhn, no costs are awarded to either party on appeal.

*By the Court.*—Judgment reversed in part and cause remanded with directions.