Trisha A. TAYLOR, Plaintiff-Respondent-Petitioner,

v.

GREATWAY INSURANCE COMPANY and Ross H. Hermanson, Defendants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Supreme Court

*No. 99–1329. Oral argument November 28, 2000.—Decided July 6, 2001.*

2001 WI 93

(Also reported in 628 N.W.2d 916.)

For the plaintiff-respondent-petitioner there were briefs by *James H. Fowler, III*, Janesville, and oral argument by *James H. Fowler, III*.

For the defendant-appellant there was a brief by *David J. Pliner* and *Corneille Law Group, L.L.C.*, Madison, and oral argument by *David J. Pliner*.

An amicus curiae brief was filed by *Robert L. Jaskulski* and *Domnitz, Mawicke & Goisman, S.C.*, Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. N. PATRICK CROOKS, J. The petitioner, Trisha A. Taylor, (Taylor) seeks review of a published decision by the court of appeals, *Taylor v. Greatway Insurance Co.*, 2000 WI App 64, 233 Wis. 2d 703, 608 N.W.2d 722. The court of appeals reversed a Rock County Circuit Court decision that denied a motion for summary judgment brought by American Family Mutual Insurance Company (American Family). The circuit court, Judge Richard T. Werner presiding, held that Taylor was entitled to underinsured motorist (UIM) coverage under her two automobile insurance policies with American Family for damages sustained when her husband was killed in an automobile accident with a vehicle driven by Ross Hermanson (Hermanson). The circuit court determined that Taylor's reasonable expectations required UIM coverage, even though Hermanson's vehicle was not an underinsured vehicle as defined by American Family's policies. It held that the reducing clause[1] in American Family's

---

[1] A reducing clause in a UIM policy decreases the UIM coverage by "the amount paid to the insured by the underin-

policies created illusory coverage and was therefore against public policy. The court of appeals reversed, holding that Taylor was not entitled to UIM coverage because the vehicle driven by Hermanson was not an underinsured vehicle as defined by American Family's policies. *Taylor*, 2000 WI App 64, ¶ 1. The court of appeals did not address whether the reducing clause in American Family's policies created illusory UIM coverage. *Id.* at ¶ 16.[2]

¶ 2. We affirm and hold that Taylor is not entitled to UIM coverage under her policies with American Family because the vehicle driven by Hermanson was not an underinsured vehicle as defined by American Family's policies. Consequently, there is no need for us to address whether the reducing clause in those policies created illusory coverage.

## I

¶ 3. The facts of the instant case are not in dispute. In September of 1993, a vehicle driven by Hermanson struck a vehicle driven by Taylor's husband, Paul Taylor. Paul Taylor died as a result of the accident. At the time of the accident, Hermanson had an automobile liability policy issued by Greatway Insurance Company (Greatway) with a $50,000 liability coverage limit. Taylor settled with Greatway for

---

sured tortfeasor." *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 1, 236 Wis. 2d 113, 613 N.W.2d 557.

[2] The court of appeals affirmed the circuit court's judgment to award Taylor accidental death benefits under both American Family policies. *Taylor v. Greatway Ins. Co.*, 2000 WI App 64, ¶ 2, 233 Wis. 2d 703, 608 N.W.2d 722. We do not review the court of appeals decision regarding accidental death benefits, since that issue was not appealed to this court.

$50,000. It was stipulated that Taylor's damages exceeded $160,000.

¶ 4. Taylor filed a complaint against American Family seeking UIM coverage under her two automobile insurance policies. Each policy contains UIM coverage with a $50,000 limit. Each policy defines an underinsured vehicle as:

> a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage.

In addition, each policy contains a reducing clause stating that:

> [t]he limits of liability of this coverage will be reduced by: A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

¶ 5. American Family moved for summary judgment claiming that Taylor was not entitled to UIM coverage. American Family argued that the vehicle driven by Hermanson was not an underinsured vehicle as defined by its policies. It pointed out that Hermanson's automobile liability policy contained a $50,000 coverage limit—one that was not less than the $50,000 limit in each of its policies.

¶ 6. In response to American Family's motion, Taylor argued that she was entitled to UIM coverage. Taylor claimed that American Family's UIM coverage of $50,000 was illusory because of the reducing clause. According to Taylor, the reducing clause created illusory coverage because she could never recover $25,000

of the $50,000 in UIM coverage under each policy, due to the requirement in Wis. Stat. § 344.33(2) (1993–94)[3] that drivers have at least $25,000 in liability insurance.[4] Therefore, Taylor argued that the fact that she could recover only $25,000 under each policy runs contrary to her reasonable expectations of $50,000 in UIM coverage under each policy.

¶ 7. The circuit court denied American Family's motion. The court held that Taylor was entitled to UIM coverage under her policies with American Family even though the vehicle driven by Hermanson did not satisfy the unambiguous definition of underinsured vehicle in American Family's policies. The court determined that the reducing clause in American Family's policies created illusory UIM coverage and was therefore against public policy. The court also determined that Taylor's expectations of $50,000 in UIM coverage under each policy were reasonable and that she was entitled to the coverage she expected.

¶ 8. As noted, the court of appeals reversed the circuit court. The court held that Taylor was not entitled to UIM coverage because the vehicle driven by Hermanson was not an underinsured vehicle as defined by American Family's policies. *Taylor*, 2000 WI App 64, ¶ 16. Since it found that Taylor was not entitled to UIM coverage, the court did not address whether the reducing clause in the policies created illusory UIM coverage. *Id.* The court of appeals stated that it would not review whether a reducing clause creates illusory UIM coverage under the circumstances

---

[3] All subsequent references to the Wisconsin Statutes are to the 1993–94 version unless otherwise indicated.

[4] Wisconsin Stat. § 344.33(2) requires that an automobile liability insurance policy provide a minimum of $25,000 in coverage for bodily injury.

presented in this case. Here the policies compared the insured's UIM coverage limit to the other driver's liability limit, and the other driver's liability coverage limit was greater than the minimum amount of liability coverage required by Wis. Stat. § 344.33(2) and was not less than the insured's UIM coverage limit. *Id.* at ¶ 15.

## II

¶ 9. We review the circuit court's denial of American Family's motion for summary judgment in the same manner as the circuit court, using the standards for summary judgment set forth in Wis. Stat. § 802.08.[5] *Smith v. Katz*, 226 Wis. 2d 798, 805, 595 N.W.2d 345 (1999). We benefit from the analysis of the circuit court and the court of appeals, however. The issue presented by the instant case is whether Taylor is entitled to UIM coverage under the American Family policies. To resolve this issue, we must interpret the language in American Family's insurance policies. The interpretation of language in an insurance policy presents a question of law that we review *de novo. Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990).

¶ 10. We apply the same rules of construction to the language in insurance policies as to the language in any other contract. *Kremers-Urban Co. v. American*

---

[5] Wisconsin Stat. § 802.08(2) provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). We construe ambiguities in coverage in favor of the insured and narrowly construe exclusions in coverage against the insurer. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d at 811. The language of an insurance policy is ambiguous when it is "susceptible to more than one reasonable construction." *Id.* If the language in an insurance policy is ambiguous, we interpret that language by trying to determine "what a reasonable person in the position of the insured would have understood the words of the policy to mean." *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 35, 236 Wis. 2d 113, 613 N.W.2d 557. In addition, the interpretation of language in an insurance policy should advance the insured's reasonable expectations of coverage. *Kremers-Urban*, 119 Wis. 2d at 735. However, we will apply the language of the policy and not engage in construction when the language of the policy is unambiguous. *Id.*

¶ 11. The result in the instant case is governed by our decision in *Smith v. Atlantic Mutual Insurance Co.* The facts of *Smith v. Atlantic Mutual Insurance Co.* were almost identical to the facts presented by the instant case. Smith was involved in an automobile accident with another driver. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d at 809–10. The other driver had an automobile liability policy with a liability coverage limit of $50,000. *Id.* Smith had a UIM policy with a coverage limit of $50,000. *Id.* at 810. Smith's UIM policy defined underinsured vehicle as a vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." *Id.* at 811. Smith settled with the other driver's liability insurance for $50,000. *Id.* at 810. Smith then submit-

ted a claim for UIM coverage. *Id.* Smith's insurer denied UIM coverage. *Id.* Smith then filed a lawsuit against her insurer. *Id.* The circuit court granted Smith's insurer's motion for summary judgment holding that the vehicle driven by the other driver was not an underinsured vehicle as defined by the insurer's policy. *Id.* The court of appeals affirmed and Smith appealed. *Id.*

¶ 12. We concluded that Smith was not entitled to UIM coverage. *Id.* at 809. The starting point of our inquiry was the definition of underinsured vehicle in Smith's UIM policy. *Id.* at 811. We determined that the definition of underinsured vehicle in Smith's UIM policy was unambiguous. *Id.* Because the definition was unambiguous, we applied the plain terms of the policy. *Id.* We concluded that the vehicle driven by the other driver was not an underinsured vehicle as defined by Smith's UIM policy because the $50,000 limit of the other driver's liability policy was equal to, not less than, the $50,000 limit of Smith's UIM policy. *Id.* Because the vehicle driven by the other driver was not an underinsured vehicle, we concluded that Smith was not entitled to UIM coverage. *Id.* Consequently, we did not address whether the reducing clause in Smith's insurer's policy created illusory UIM coverage. *Id.* at 814.

¶ 13. We follow our analysis in *Smith v. Atlantic Mutual Insurance Co.* to determine whether Taylor is entitled to UIM coverage under her policies with American Family. We therefore start our inquiry with the definition of underinsured vehicle in American Family's policies. Like the definition of underinsured vehicle in *Smith v. Atlantic Mutual Insurance Co.*, we conclude that the definition of underinsured vehicle in

143

American Family's policies is unambiguous. 155 Wis. 2d at 811. The definition clearly requires that an underinsured vehicle must have a liability coverage limit less than the limit of Taylor's UIM coverage. As we did in *Smith v. Atlantic Mutual Insurance Co.*, we apply the plain terms of the unambiguous definition. *Id.* Hermanson's liability coverage limit is $50,000. Taylor's UIM coverage limit in each of her policies issued by American Family is $50,000. Hermanson's $50,000 liability coverage limit is equal to, not less than, Taylor's $50,000 UIM coverage limit in each policy.[6] The vehicle driven by Hermanson is not an underinsured vehicle as defined by American Family's policies. Taylor is therefore not entitled to UIM coverage under her policies with American Family. As a result, we do not address whether the reducing clause in American Family's policies creates illusory coverage, just as we did "not reach the issue regarding to what extent the policy's reducing clause may affect [the UIM coverage]" in *Smith v. Atlantic Mutual Insurance Co.*, 155 Wis. 2d at 814.

¶ 14. Taylor contends that she is entitled to UIM coverage. She asks us to proceed with our analysis beyond the unambiguous definition of underinsured vehicle and conclude that the reducing clause in American Family's policies created illusory UIM coverage. Taylor argues that she expected to receive $50,000 in UIM coverage and that this expectation was reasonable. According to Taylor, the reducing clause runs contrary to her reasonable expectations of UIM coverage because the reducing clause will always decrease

---

[6] We compare the limits of the insured's UIM policies individually to determine whether the other vehicle satisfies a policy definition of underinsured motorist. *Krech v. Hanson*, 164 Wis. 2d 170, 172–73, 473 N.W.2d 600 (Ct. App. 1991).

her UIM coverage by $25,000. She claims that the reducing clause will always decrease Taylor's UIM coverage by $25,000 because vehicles are required by Wis. Stat. § 344.33(2) to have at least $25,000 in liability coverage. Therefore, Taylor argues that $25,000 of the $50,000 in UIM coverage is illusory. Consequently, Taylor asks us to fulfill her reasonable expectations of coverage and conclude that she is entitled to $50,000 in UIM coverage under each of her policies with American Family.

¶ 15. We decline Taylor's request to proceed with a detailed analysis beyond the unambiguous definition of underinsured vehicle in American Family's policies. Because the vehicle driven by Hermanson is not an underinsured vehicle, Taylor is not entitled to UIM coverage. There is no need to address whether the reducing clause in American Family's policies created illusory coverage.

¶ 16. The cases cited by Taylor in support of her illusory coverage argument do not govern the result of the instant case. We will address each of those cases, relied upon by Taylor, in order to show their inapplicability under the circumstances presented by this case.

¶ 17. Taylor relies upon *Sweeney v. General Casualty Co. of Wisconsin*, 220 Wis. 2d 183, 582 N.W.2d 735 (Ct. App. 1998) and *Kuhn v. Allstate Insurance Co.*, 181 Wis. 2d 453, 510 N.W.2d 826 (Ct. App. 1993), *aff'd*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995), to support the proposition that a court may proceed beyond unambiguous policy provisions, which preclude coverage, to find that coverage exists. In both cases, the court of appeals held that the reducing clause in question was invalid because it rendered the UIM coverage illusory. *Sweeney*, 220 Wis. 2d at 184; *Kuhn*, 181 Wis. 2d at 457.

¶ 18. Both cases are distinguishable from the instant case. There was no question in either case that the vehicle that caused the accident was an underinsured vehicle as defined by the relevant policy language. *Sweeney*, 220 Wis. 2d at 188; *Kuhn*, 181 Wis. 2d at 462. By contrast, there is no question in the instant case that the vehicle driven by Hermanson is not an underinsured vehicle as defined by American Family's policies. Consequently, based on her reliance on these cases, Taylor cannot establish entitlement to UIM coverage under her policies with American Family.

¶ 19. Taylor relies upon *Hoglund v. Secura Insurance Co.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993), to support the proposition that a court may proceed beyond an unambiguous policy definition of underinsured vehicle to determine that a reducing clause creates illusory coverage. In *Hoglund*, the court of appeals held that an unambiguous definition of underinsured vehicle created illusory UIM coverage. 176 Wis. 2d at 269. Hoglund was injured in an accident with another driver. *Id.* at 267. Hoglund's UIM policy had a $25,000 coverage limit. *Id.* at 267–68. The other driver had a liability policy with a coverage limit of $25,000, the minimum amount required by Wis. Stat. § 344.33(2). *Id.* at 267.[7] An underinsured vehicle,

---

[7] The relevant language of Wis. Stat. § 344.33(2) provides that:

A motor vehicle policy of liability insurance shall insure the person named therein using any motor vehicle with the express or implied permission of the owner, against loss from the liability imposed by law for damages arising out of the maintenance or use of the motor vehicle within the United States of America or the Dominion of Canada, subject to the limits exclusive of interests and costs, with respect to each such motor vehicle as follows: $25,000 because of bodily injury to or death of one person in any one accident . . . .

according to the unambiguous definition in Hoglund's policy, must have liability coverage with a limit less than Hoglund's UIM coverage limit. *Id.* at 269. The court determined that Hoglund's UIM coverage was illusory because the other driver's liability coverage limit, the minimum amount required by § 344.33(2), could never be less than Hoglund's UIM coverage limit. *Id.* As a result, Hoglund could never recover under her UIM coverage so long as her UIM coverage limit is the same as the minimum amount of liability coverage required by § 344.33(2). *Id.* at 270. The court then remanded the case to the trial court to "reform the UIM coverage" to match Hoglund's reasonable expectations. *Id.* at 272.[8]

---

[8] The court of appeals followed *Hoglund v. Secura Insurance Co.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993), in *Allstate Insurance Co. v. Gifford*, 178 Wis. 2d 341, 504 N.W.2d 370 (Ct. App. 1993), and *Meyer v. Classified Insurance Co., Inc.*, 192 Wis. 2d 463, 531 N.W.2d 416 (Ct. App. 1995). In *Gifford*, Gifford was injured in an automobile accident with another driver. 178 Wis. 2d at 344. Gifford had UIM coverage with a limit of $25,000. *Id.* at 347. The other driver had liability coverage with a limit of $25,000, the minimum amount required by Wis. Stat. § 344.33(2). *Id.* at 347–49. Gifford's UIM policy contained an unambiguous definition of underinsured vehicle almost identical to the definition in *Hoglund*. *Id.* at 347. The court held that Gifford's UIM coverage was illusory because Gifford, like Hoglund, could never recover under his UIM policy. *Id.* at 349–50. The court then remanded the case to the trial court to determine Gifford's reasonable expectations of coverage. *Id.* at 350. In *Meyer*, Meyer was injured in an automobile accident with another driver. 192 Wis. 2d at 466. Meyer had UIM coverage with a limit of $25,000. *Id.* The other driver had liability coverage with a limit of $100,000. *Id.* Meyer's UIM policy contained an unambiguous definition of underinsured vehicle almost identical to the definitions in *Hoglund* and *Gif-*

¶ 20. *Hoglund* does not govern the result of the instant case for two reasons. First, the court of appeals in *Hoglund* held that the insurance policy definition of underinsured vehicle, in combination with the minimum liability coverage requirement of Wis. Stat. § 344.33(2), created illusory UIM coverage. 176 Wis. 2d at 269. In the instant case, Taylor asks us to proceed beyond the unambiguous definition of underinsured vehicle and conclude that the reducing clause creates illusory coverage. Second, there was no possibility under the circumstances in *Hoglund* that the insured driver could recover under her UIM policy because the policy defined an underinsured vehicle as a vehicle with liability limits less than the limits of the UIM coverage and because Hoglund had a UIM coverage limit of $25,000, the minimum amount for liability insurance required by § 344.33(2). 176 Wis. 2d at 270. In the instant case, Taylor has a UIM coverage limit of $50,000, an amount greater than the minimum amount of liability coverage required by § 344.33(2). As a result, it is possible for another driver to have a liability coverage limit less than Taylor's UIM coverage limit and, therefore, satisfy the American Family policy definition of underinsured vehicle.

---

*ford. Id.* at 467. The court held that Meyer's UIM coverage was illusory because Meyer, like Hoglund and Gifford, could never recover under her UIM policy. *Id.* at 468. The court also held that the remand in *Hoglund* was improper because the determination of an insured's reasonable expectations of coverage presents a question of law reviewed independently from the trial court. *Id.* at 468–69. The court concluded that, under these circumstances, an insured reasonably expects $25,000 in UIM coverage when the insured pays for $25,000 in UIM coverage. *Id.* at 469.

¶ 21. Taylor contends that the American Family definition of underinsured vehicle, when combined with the reducing clause, violates public policy. Taylor argues that the definition and reducing clause operate together to guarantee that $25,000 of the $50,000 in UIM coverage promised by American Family will never be paid. According to Taylor, a promise of coverage that will never be paid is illusory coverage that violates public policy.

¶ 22. Taylor cites *Rodey v. Stoner*, 180 Wis. 2d 309, 509 N.W.2d 316 (Ct. App. 1993), to support the proposition that a court may conclude that an insurance policy's unambiguous definition of underinsured motor vehicle, in combination with other provisions of the insurance policy, violates public policy. Rodey was injured in a single-car accident while a passenger in his own vehicle. *Rodey*, 180 Wis. 2d at 311. Rodey received $50,000 from the vehicle's liability insurer. *Id.* Rodey was also insured by his mother's and stepfather's UIM insurance due to the fact that he lived with his mother and stepfather. *Id.* The UIM insurer denied Rodey coverage because his vehicle was not an underinsured vehicle as defined by the policy and because the policy's drive-other-car exclusion[9] prohibited coverage. *Id.* The court of appeals held that the policy definition of underinsured motor vehicle, when combined with the drive-other-car exclusion, violated Wis. Stat. § 631.43(1).[10]

---

[9] The "drive-other-car exclusion" in the UIM insurance policy prohibited coverage for vehicles not insured by the policy that are owned by the insured, a relative of the insured, or another person living in the insured's household. *Rodey v. Stoner*, 180 Wis. 2d 309, 313, 509 N.W.2d 316 (Ct. App. 1993).

[10] Wisconsin Stat. § 631.43 prohibits reducing clauses when two policies promise to indemnify the insured against the same

¶ 23. *Rodey* does not govern the result in the instant case. First, the Wisconsin legislature overruled the *Rodey* decision by enacting Wis. Stat. § 632.32(5)(j) which made "drive-other-car exclusions" valid. *Roehl v. American Family Mut. Ins. Co.*, 222 Wis. 2d 136, 143, 585 N.W.2d 893 (Ct. App. 1998). Second, *Rodey* involved a statutory challenge to an insurance policy definition and a reducing clause. Taylor does not argue that any section, or combination of sections, in each UIM policy issued by American Family violates Wis. Stat. § 631.43 or any other statute. Taylor does argue that the reducing clause in each policy violates public policy by creating illusory coverage. As we held in *Smith v. Atlantic Mutual Insurance Co.*, here we do not address whether the reducing clause creates illusory UIM coverage because Taylor, by policy definition, is not entitled to UIM coverage in the first instance. The vehicle driven by Hermanson was not an underinsured vehicle under the policy definition.

¶ 24. The Wisconsin Academy of Trial Lawyers (WATL) asks us in its amicus brief to conclude that the language in American Family's policies creates illusory coverage and is against public policy. WATL argues that the reducing clause in each policy is invalid because the policy does not clearly state that the limit of Taylor's UIM coverage is reached by combining con-

loss. *Rodey*, 180 Wis. 2d at 314. That section states, in pertinent part:

Other insurance provisions.

(1) General. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

150

tributions from all sources, including Hermanson's liability coverage. Because the reducing clause is unclear, WATL asks us to conclude that American Family's UIM coverage is ambiguous and, therefore, asks us to construe the policy in favor of Taylor. To support its argument, WATL cites *Dowhower v. West Bend Mutual Insurance Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557.[11] In *Dowhower*, we held that a reducing clause in an UIM policy is valid so long as "the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." 2000 WI 73, ¶ 33. We reached this conclusion after considering the case law regarding UIM coverage in conjunction with the statute that authorizes reducing clauses in UIM policies, Wis. Stat. § 632.32(5)(i)1.[12] *Id.*

¶ 25. We conclude that the language in each of American Family's policies at issue satisfies the requirements of *Dowhower*. Each policy clearly sets forth that Taylor purchased a fixed level of UIM recovery that is arrived at by combining payments from all sources, including payments from Hermanson's liability coverage. Taylor has two policies issued by

---

[11] In *Dowhower*, the insureds claimed that the statute that authorizes the use of a reducing clause in UIM policies, Wis. Stat. § 632.32(5)(i)1, violated their substantive due process right to contract without fraud or deception. 2000 WI 73, ¶ 15. We held that the insureds failed to establish that § 632.32(5)(i)1 deprived them of a right protected by the Constitution. *Id.*

[12] Wisconsin Stat. § 632.32(5)(i)1 (1995–96) provides:

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply: Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

American Family, one that is 14 pages long and one that is 15 pages long. The first page of each policy, the declarations page, lists the coverage limits of the policy, including the $50,000 limit for UIM coverage. The first page of each policy also includes an instruction to "please read your policy" that is located on the top of the page in bold letters. Page 3 of each policy includes an instruction for the insured to read the policy carefully. Pages 11 and 12 constitute the underinsured motorist coverage endorsement of both policies.[13] The underinsured motorist endorsement of each policy instructs the insured to keep the endorsement with the rest of the policy. This instruction is on the top of the first page of the endorsement in bold letters. The definition for underinsured vehicle is located in both policies on page 1 of the endorsement. The reducing clause for UIM coverage is located in both policies on page 2 of the endorsement. When we read the whole policy carefully, as noted on the first and third pages, we find that the policy clearly sets forth that Taylor purchased a fixed level of UIM recovery that is arrived at by combining payments from all sources, including payments from Hermanson's liability coverage.

¶ 26. We recognized in *Dowhower* that the language in an insurance policy can be ambiguous within the context of the whole policy. *Id.* at ¶ 35. When the language of an insurance policy is ambiguous, we interpret that language by attempting "to determine what a reasonable person in the position of the insured would have understood the words of the policy to mean." *Id.* (citations omitted)

¶ 27. The definition of underinsured vehicle in American Family's policy is unambiguous within the

---

[13] An endorsement is an amendment to an insurance policy. *Black's Law Dictionary* 548 (7th ed. 1999).

context of the entire policy. We find nothing in the rest of American Family's policy that obscures the unambiguous definition of underinsured vehicle. Besides the definition of underinsured vehicle on page 11 of each policy, there are only two other references to UIM coverage in each policy. First, the limit of Taylor's UIM coverage set forth on page one provides part of the definition of underinsured vehicle that requires the underinsured vehicle to have a liability coverage limit less than the limit of Taylor's UIM coverage. Second, the reducing clause set forth on page 12 only applies after a vehicle has satisfied the definition of underinsured vehicle. The reducing clause does not affect the definition itself. There is no language anywhere in the policy that calls into question the fact that an underinsured vehicle is one that has liability coverage limits less than the policy's UIM coverage limit. As a result, the definition of underinsured vehicle in each policy is unambiguous within the context of the entire policy. Because the definition of underinsured vehicle in each of American Family's policies is unambiguous standing on its own and in the context of the whole policy, we do not need to engage in construction to determine Taylor's reasonable expectations of coverage. *Kremers-Urban*, 119 Wis. 2d at 735.

### III

¶ 28. In summary, we hold that Taylor is not entitled to UIM coverage under her policies with American Family. The definition of underinsured vehicle in each of American Family's policies at issue is unambiguous. We apply the plain terms of this unambiguous definition to conclude that the vehicle driven by Hermanson was not an underinsured vehicle. Because Taylor, by definition in each policy, is not entitled to

UIM coverage, there is no need to address whether the reducing clause in each policy creates illusory UIM coverage. Accordingly, we affirm the judgment of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 29. ANN WALSH BRADLEY, J. *(dissenting)*. Reasonable insureds believe that an underinsured motorist endorsement provides coverage when an at-fault driver's liability insurance cannot fully compensate the insured's damages. Such a belief is supported by this court's oft-stated purpose of UIM coverage. Because the relevant provisions of the policies at issue in this case are inconsistent with the stated purpose of UIM coverage and contrary to the reasonable expectations of the insured, I respectfully dissent.

¶ 30. This case presents us with the opportunity to review both the definition of underinsured motor vehicle and the reducing clause appearing in the UIM endorsements. The majority, focusing on the definition of underinsured motor vehicle, concludes that the language is unambiguous and that "the vehicle driven by Hermanson was not an underinsured vehicle as defined by American Family's policies." Majority op. at ¶ 2. Having reached this conclusion, the majority determines that it need not examine the reducing clause.

¶ 31. Both the definition of underinsured motor vehicle and the operation of the reducing clause in these policies are inconsistent with the purposes of these clauses. Both are also contrary to the reasonable expectations of the insured. Yet, the majority sacrifices the purpose of the coverage and the reasonable expec-

154

tations of the insured at the altar of an unambiguous definition. In essence, the majority declares that regardless of whether the definition is consistent with the purpose of UIM coverage, regardless of whether it is contrary to the reasonable expectations of the insured, and regardless of whether the definition of underinsured motor vehicle makes sense, it will be enforced if the language is unambiguous.

¶ 32. To illustrate the infirmity of the majority's approach, I turn first to an examination of the purpose of UIM coverage. This court has previously acknowledged that the purpose of UIM coverage is to compensate the victim of an underinsured motorist's negligence when the third party's liability limits are not adequate to fully compensate the damages of the victim. We have stated:

> "[U]nderinsurance benefits constitute the insurance coverage for damages in excess of the tortfeasor's insurance coverage.". . ."[T]he limit of the underinsurer's liability is for the amount of damages suffered by the insured in excess of the liability limits of the tortfeasor."

*Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 655, 436 N.W.2d 594 (1989), *overruled on other grounds, Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995); *Kaun v. Industrial Fire & Cas.*, 148 Wis. 2d 662, 671, 436 N.W.2d 321 (1989).

¶ 33. Although the purpose of UIM remains a constant, it has apparently gone unnoticed by our courts that there are two definitions of underinsured motor vehicle. One is inconsistent with the stated purpose of UIM and the reasonable expectations of the insureds, while the other is consistent with them. In some of the policies addressed by this court and the

court of appeals in the past decade, an underinsured motor vehicle is defined as one insured by a policy with liability limits less than the insured's UIM coverage limits (limits of coverage). In others an underinsured motor vehicle is defined, as one would reasonably expect, by comparison of the at-fault driver's liability limits with the damages sustained by the insured (limits of damages).

¶ 34. In the two policies at issue in today's case an underinsured motor vehicle is defined by the limits of coverage:

> [A] motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits *less than the limits of liability of this Underinsured Motorists Coverage*. (Emphasis added.)

¶ 35. The problem with this definition lies in the fact that no ordinary citizen purchasing UIM coverage would anticipate it. A reasonable insured would not expect his or her damages to be wholly irrelevant to the determination of whether an at-fault driver is considered underinsured. An insured with $200,000 in damages would be surprised to learn that an at-fault driver with liability limits of $100,000 does not meet the definition of underinsured when the insured's UIM limits are also $100,000. When purchasing UIM coverage, reasonable insureds believe they are purchasing coverage for their damages in a set dollar amount above and beyond the liability limits of the at-fault driver.

¶ 36. This problematic "limits of coverage" definition of underinsured motor vehicle is in stark contrast with the definition found in other policies. Some insurers have issued policies with a definition that comports

with the purpose of UIM and the reasonable expectations of the insured. In a handful of cases before this court and the court of appeals the policy at issue contained a "limits of damages" definition of underinsured motor vehicle:

> "Underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury limits *less than the damages an insured person is legally entitled to recover.*"

*Matthiesen,* 193 Wis. 2d at 197 (emphasis added); *Fairbanks v. American Family Mut. Ins. Co.,* 181 Wis. 2d 838, 841, 512 N.W.2d 230 (1994).

¶ 37. I cannot join the majority in the enforcement of the "limits of coverage" definition of underinsured motor vehicle in the case at hand. I acknowledge that as a general matter insurance contracts are subject to the same rules of construction as other contracts. *Whirlpool Corp. v. Zeibert,* 197 Wis. 2d 144, 152, 539 N.W.2d 883 (1995). However, we have repeatedly explained that the reasonable expectations of the insured is the touchstone of coverage determinations. *Carrington v. St. Paul Fire & Marine Ins. Co.,* 169 Wis. 2d 211, 226, 485 N.W.2d 267 (1992). Additionally, we have specifically stated that UIM insurance contracts must be construed according to the reasonable expectations of the insured. *Matthiesen,* 193 Wis. 2d at 204; *Kuhn v. Allstate Ins. Co.,* 193 Wis. 2d 50, 60, 532 N.W.2d 124 (1995); *Kaun,* 148 Wis. 2d at 670–71; *Wood,* 148 Wis. 2d at 652.

¶ 38. Because the majority's construction and enforcement of the "limits of coverage" definition is so contrary to those expectations, our maxims regarding the reasonable expectations of the insured and our

157

stated understandings of the purpose of UIM coverage ring hollow today. Only the "limits of damages" definition can be plainly construed and enforced in a manner consistent with the purpose of UIM and the reasonable expectations of the insured.

¶ 39. The combination of a reasonable insured's understanding of UIM coverage and this court's statements regarding the purpose of that coverage together with the "limits of coverage" definition conveys inconsistent messages that would befuddle a reasonable insured. An endorsement containing the "limits of coverage" definition cannot clearly and unequivocally inform an insured that the UIM coverage they have purchased applies only where the at-fault driver carries liability insurance in an amount less than that found in the declarations page.

¶ 40. The majority relies on this court's determination in *Smith v. Atlantic Mutual Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), that the "limits of coverage" definition is unambiguous and that failure to satisfy it prevents consideration of other underlying deceptions in a UIM endorsement. However, the *Smith* court did not address the reasonable expectations of the insured when construing the language of the definition.

¶ 41. I note that the decision in *Smith* was issued before the tide of UIM litigation in the 1990s revealed UIM's many traps. The *Smith* court declined to address "hypothetical" situations of illusory coverage and inequitable results. 155 Wis. 2d at 813–14. The subsequent body of UIM case law reveals that those problems were soon no longer hypothetical, but were real and tangible instances of deception perpetrated on Wisconsin

insureds.[1] I do not believe this case involves a hypothetical instance of the deception of UIM coverage, because any objectively reasonable insured in the shoes of Trisha Taylor would anticipate that her UIM endorsement would have provided coverage when the at-fault driver carried liability insurance insufficient to cover her damages.

¶ 42. Fixing the definition of underinsured motor vehicle will bring us only halfway to remedying the deceptive nature of UIM coverage, for it is the reducing clause that wreaks the most havoc on the reasonable expectations of the insured. Even if a definition of underinsured motor vehicle that an insured would reasonably anticipate appears in a policy, the reducing clause in most cases acts to wipe away that which an insured would reasonably expect to recover.

¶ 43. In examining the reducing clause, I again turn first to the purpose of such a clause. It is com-

[1] The most disturbing of all the problems posed by the "limits of coverage" definition was the sale of illusory UIM coverage. The court of appeals explained that this problem arose with the sale of UIM endorsements providing coverage limits of $25,000. *Meyer v. Classified Ins. Co.*, 192 Wis. 2d 463, 531 N.W.2d 416 (Ct. App. 1995); *Hoglund v. Secura Ins. Co.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993). Because Wis. Stat. § 344.33 requires liability limits of at least $25,000, no insured at-fault Wisconsin driver could ever be underinsured. Moreover, if an out-of-state driver were insured only to the minimum liability limits required by another state's financial responsibility law and those limits were less than those required by Wis. Stat. § 343.44, that driver was by the terms of standard UM and UIM policies considered uninsured. In such a situation it was impossible for an insured to recover under UIM. While this specific problem has been mitigated by § 632.32(4m)(d), which requires minimum UIM coverage of $50,000/$100,000, UIM coverage, as I explain below, remains an illusion in most cases.

159

monly understood that the purpose of a reducing clause is to prevent double recovery. As *Couch on Insurance* explains:

> Generally, public policy requires that setoff provisions in connection with uninsured and underinsured motorist coverage apply only where necessary to prevent double recovery.

Lee R. Russ & Thomas F. Segalla, 12 *Couch on Insurance* § 171.23 (3d ed. 1998). In today's case, and in most cases before us, the insurer cannot argue in good faith that the reducing clause is working to prevent a double recovery.

¶ 44.　Here, it is uncontested that Trisha Taylor's damages exceed $150,000. Yet, despite two UIM policies each providing for $50,000 in coverage on the declarations page, the reducing clause would operate in this case to erase any recovery under the UIM endorsements. In the position of a reasonable insured the UIM coverage in this instance is worthless. A reasonable insured would anticipate $100,000 in coverage above and beyond the $50,000 paid out by the tortfeasor's liability insurer. The reducing clauses in these policies serve not to prevent double recovery, but rather serve to prevent recovery in the first instance.

¶ 45.　While I do not question the validity of a statutorily authorized reducing clause, I do question the validity of a policy crafted around the reducing clause in such a way as to defeat the reasonable expectations of the insured. As stated in the concurrence in *Dowhower v. West Bend Mutual Insurance Co.*, 2000 WI 73, ¶ 50, 236 Wis. 2d 113, 613 N.W.2d 557 (Bradley, J., concurring):

Although it authorized reducing clauses under Wis. Stat. § 632.32(5)(i)1, the legislature envisioned clear policies without a hint of illusion to protect consumers from fraudulent practices. It did not authorize deception in the implementation of the statute.

¶ 46. Reducing clauses, as employed in the policies before us, all but eliminate coverage in a large number of cases. As a practical matter, it is only when UIM coverage limits reach fairly high dollar amounts that we can expect to consistently see actual recovery of UIM proceeds. Even then, however, recovery would never be in the amount stated on the declaration sheet.

¶ 47. It can be said with certainty that under all policies, the first $25,000 of all UIM coverage is not truly "coverage" at all. By operation of Wis. Stat. § 344.33, an underinsured driver will always have at least $25,000 in liability coverage. Moreover, because the reducing clause tends to render worthless the lower levels of UIM coverage, it has the harshest effects on those who can only afford to purchase the lower limits of UIM coverage. I do not believe that the legislature intended to authorize a reducing clause that renders worthless the UIM coverage sold to Wisconsin insureds.

¶ 48. While a reducing clause serves a legitimate function in a framework in which it operates to prevent double recovery, under the current state of UIM law it functions to thwart the reasonable expectations of Wisconsin insureds. The UIM endorsements in the case at hand are devoid of any mechanism by which the reducing clause works only to prevent double recovery, and as such should be construed in a manner consistent with that purpose and the reasonable expectations of an insured.

¶ 49. Having concluded that the provisions at issue in this case operate in contravention of the reasonable insured's expectations and the purposes of those provisions, I join the court of appeals in requesting that the legislature provide a statutory definition of underinsured motor vehicle. The definition should reflect the purpose of UIM coverage and the reasonable expectations of the Wisconsin insured. Likewise, I urge the legislature to examine the ramifications of the reducing clause authorized by Wis. Stat. § 632.32(5)(i)1 when it operates in conjunction with other policy provisions.

¶ 50. In sum, this court should no longer ignore the disparity between the commonly held conception of underinsured motorist coverage and the terms of the UIM endorsements brought before us in all too frequent litigation. Were the majority to reach the correct result in this case, it would acknowledge that a reasonable insured would find the "limits of coverage" definition in the policies before us to be counterintuitive. It would also acknowledge that the reducing clause, while valid as a means of avoiding double recovery, has been adapted as a means of avoiding reasonably anticipated UIM coverage. The majority in this case does neither. Rather, it sanctions the "limits of coverage" definition and avoids any discussion of the operation of the reducing clause. Accordingly, I respectfully dissent.

¶ 51. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice WILLIAM A. BABLITCH join this dissent.