David GINDER and Kathleen Ginder, Plaintiffs-
Respondents,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-
Appellant.†

Court of Appeals

*No. 99–1550. Submitted on briefs March 10, 2000.—Decided
August 2, 2000.*

## 2000 WI App 197

(Also reported in 617 N.W.2d 857.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert F. Johnson* and *John M. Swietlik, Jr.* of *Cook & Franke, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Virginia M. Antoine* of *Habush, Habush, Davis & Rottier, S.C.* of Milwaukee.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. General Casualty Company of Wisconsin appeals from an order granting David and Kathleen Ginder's (the Ginders) motion for declaratory judgment finding $200,000 of underinsured motorist (UIM) coverage available to the Ginders. General Casualty contends that UIM coverage is not triggered because its policy precludes stacking of multiple coverages in determining whether a tortfeasor's vehicle qualifies as an "underinsured motor vehicle." We reject General Casualty's argument because its policy, through a provision entitled "split limit liability," calls for aggregating benefits in calculating its limit of liability. We therefore affirm the circuit court's order.

## BACKGROUND

¶ 2. In April 1992, General Casualty issued a policy to the Ginders providing automobile insurance with UIM coverage limits of $100,000 for each person and $300,000 for each accident. On July 13, 1992, David Ginder was injured in an automobile accident with Jason Charneski. At the time of the accident, Charneski had insurance with American Standard Insurance Co., which provided liability coverage with bodily injury limits of $100,000 for each person and $300,000 for each accident. American Standard settled the Ginders' claims for the policy limits of $100,000. The Ginders then sought UIM benefits under the General Casualty policy which provided coverage for the automobile involved in the accident and another vehicle. The Ginders asserted that they should be able to stack the UIM coverage for both vehicles, resulting in UIM coverage with limits of $200,000.

¶ 3. General Casualty denied the Ginders' claim because it believed the Charneski vehicle did not meet the definition of an "underinsured motor vehicle"

within the policy. The Ginders then filed this action. Both parties moved the circuit court for a declaratory judgment on the issue of coverage. At a March 1999 hearing, the court found that the policy was ambiguous as to UIM coverage and that the ambiguity should be construed in favor of the Ginders. The court concluded that $200,000 was available to the Ginders in UIM benefits. General Casualty appeals.

## DISCUSSION

■

¶ 4.   The interpretation of an insurance policy is a question of law which we decide de novo. *See Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640, 644, 579 N.W.2d 65 (Ct. App.), *review denied*, 220 Wis. 2d 366, 585 N.W.2d 158 (Wis. July 24, 1998) (No. 97–2136). Any ambiguity in the policy language is to be construed in favor of coverage. *See Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). Where language in an insurance contract is unambiguous, we simply apply the policy language to the facts of the case. *See Grotelueschen v. American Family Mut. Ins. Co.*, 171 Wis. 2d 437, 447, 492 N.W.2d 131 (1992). In doing so, we give the policy terms their plain meaning—the meaning a reasonable person in the position of the insured would give them. *See id.* The interpretation of UIM provisions should be consistent with the purpose of UIM coverage which is to protect an insured where a tortfeasor has liability coverage inadequate in amount for the injuries caused. *See Taylor v. Greatway Ins. Co.*, 2000 WI App 64, ¶ 8, 233 Wis. 2d 703, 608 N.W.2d 722, *review granted*, 237 Wis. 2d 251, 616 N.W.2d 114 (Wis. May 23, 2000) (No. 99–1329).

¶ 5. We begin by looking at the terms of the General Casualty policy. The policy defines an "underinsured motor vehicle" as

> a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

This is the same UIM definition reviewed in *Smith v. Atlantic Mutual Insurance Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990), which our supreme court determined was unambiguous.

¶ 6. Next, the declarations page states that "insurance is provided where a premium is shown for the coverage." The declarations page then provides the following liability limits:

| COVERAGE | LIMIT OF LIABILITY | PREMIUM | |
| --- | --- | --- | --- |
| | | UNIT 1 | UNIT 2 |
| SPLIT LIMIT LIABILITY BODILY INJURY | $110,000 EA PERSON $300,000 EA ACCIDENT | 118.00 | 90.00 |
| . . . . | | | |
| UNDERINSURED MOTORIST BODILY INJURY | $100,000 EA PERSON $300,000 EA ACCIDENT | 20.00 | 20.00 |
| . . . . | | | |
| | TOTAL BY UNIT | 558.00 | 438.00 |
| | TOTAL TERM PREMIUM | $996.00 | |

¶ 7. General Casualty argues that the Charneski vehicle is not an underinsured motor vehicle because Charneski's liability limits are equal to General Casualty's UIM coverage limits for each vehicle. General Casualty relies in large part on *Krech v. Hanson*, 164

Wis. 2d 170, 173, 473 N.W.2d 600 (Ct. App. 1991). In that case, Krech was injured in a vehicle driven by Hanson and insured with liability limits of $100,000 per person. *See id.* at 172. Krech was covered by a policy that insured two vehicles and included UIM coverage limits of $100,000 per person. *See id.* Like the Ginders' policy, the policy in *Krech* defined "underinsured motorist vehicle" as "a motor vehicle for which there is a bodily injury policy or liability bond available at the time of the car accident which provides bodily injury liability limits less than the limit of liability for this coverage." *Id.* at 172 (emphasis omitted).

¶ 8. Krech requested that this court stack the $100,000 UIM coverage for each vehicle on his policy so that Hanson's vehicle would qualify as an underinsured motor vehicle. *See id.* We rejected this approach because, before stacking could occur, we had to determine if Hanson's vehicle qualified as an underinsured vehicle. *See id.* at 173. In making this determination, we first noted that although the two insured vehicles were listed on the same document, there were two separate policies because separate premiums were charged for each vehicle. *See id.* Since neither policy separately provided indemnification against the "same loss," we determined that the benefits could not be stacked. *See id.* We then compared the policy's $100,000 UIM coverage for each vehicle with Hanson's $100,000 liability coverage and concluded that because the coverages were the same, Hanson's vehicle was not an underinsured vehicle. *See id.* at 176; *see also Smith,* 155 Wis. 2d at 811 (holding that UIM coverage only applies "when the owner or driver of the other vehicle maintains a policy with a lower coverage than the insured").

¶ 9. At first blush, *Krech* appears to control. Like *Krech*, the General Casualty policy contains the same definition of "underinsured motor vehicle." In addition, because the General Casualty declarations page includes two separate premiums for two $100,000 limits on UIM coverage, *Krech* informs us that there are essentially two separate policies. *See Krech*, 164 Wis. 2d at 173. Further, *Krech* instructs that before we consider stacking UIM benefits, we are to compare the tortfeasor's liability coverage with each policy's UIM coverage. *See id.* at 176. In this case, Charneski's insurance provides $100,000 in liability coverage and each General Casualty policy likewise provides $100,000 in UIM coverage. Because these amounts are the same, General Casualty would have us conclude that the Charneski vehicle is not an underinsured motor vehicle. *See id.* at 176.

¶ 10. This case is not the same as *Krech*, however. Unlike *Krech*, the Ginders' declarations page makes reference to "split limit liability" in setting forth the policy's coverage. The declarations page, however, does not define or further address the meaning of "split limit liability." Because this phrase is not explained in the policy's declarations, we are prompted to consider the terms of the policy.

¶ 11. The UIM coverage section of the policy contains a provision regarding "split limit liability." This provision states in pertinent part:

**Split Limit Liability.** If Split Limit Liability is provided in the Declarations:

A. If "bodily injury" is sustained in an accident by you or any "family member;"

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death,

arising out of "bodily injury" sustained *by any one person* in any such accident is *the sum of the limits of liability shown in the Declarations for each person for Underinsured Motorist Coverage*;

2. Subject to the maximum limit for each person described in paragraph 1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is *the sum of the limits of liability shown in the Declarations for each accident for Underinsured Motorist Coverage* . . . . (Emphasis added.)

This language explains that General Casualty's liability limit pertaining to *any one person* in an accident is the *sum* of the liability limits shown in the declarations page for each person for UIM coverage. For the entire accident, the liability limit includes the sum of liability limits found on the declarations page for each accident for UIM coverage.

¶ 12. We now apply the split limit liability provision to our underinsured motor vehicle determination. First, the definition of "underinsured motor vehicle" requires that we compare the tortfeasor's liability limit to "the limit of liability for this coverage." Next, the declarations page indicates that the Ginders' coverage provides a split limit liability policy with $100,000 UIM coverage per person and $300,000 UIM coverage per accident for two separate vehicles. Because General Casualty's UIM liability limit for one person is the *sum* of the liability limits shown for each person, and because there is coverage for two vehicles, the sum total is $200,000.

¶ 13. We next compare Charneski's $100,000 liability limit to General Casualty's $200,000 UIM coverage limit. Given that General Casualty's UIM

513

coverage is greater than Charneski's, his vehicle is deemed an "underinsured motor vehicle" and General Casualty's UIM coverage is therefore triggered.

¶ 14.   General Casualty objects to any reliance upon the split limit liability provision because that section refers to "the *maximum* limit of liability," while the "underinsured motor vehicle" definition simply makes reference to "the limit of liability." We do not detect any substantive difference between these phrases. First, General Casualty's policy does not suggest that the split limit liability policy provision should not be used in applying the definition of "underinsured motor vehicle." The policy also does not offer any definitional explanation to differentiate these phrases. Second, while the split limit liability provision states that "the maximum limit of liability" includes damages for care, loss of services or death arising out of bodily injury, the "underinsured motor vehicle" definition also refers to "bodily injury" liability. Although "the maximum limit of liability" language is more descriptive, there is no indication that it provides for greater coverage than the "limit of liability" language. Finally, we are persuaded that a reasonable person in the position of the insured would interpret these phrases as being synonymous.

¶ 15.   General Casualty next claims that its policy specifically precludes stacking of the UIM liability limits based upon the number of vehicles insured. Within the split limit liability provision, the policy states that "[t]he maximum limit of liability is the most we will pay regardless of the number of . . . 3. Vehicles or premiums shown in the Declarations." This language apparently restricts General Casualty's liability limit to its coverage for a single vehicle rather than to the sum of liability limits for all insured vehicles. This

provision, therefore, creates a conflict with the split limit liability's statement that the maximum limit of liability for one person is the sum of the limits of liability for each person in the declarations page for UIM coverage. Such a conflict renders ambiguous General Casualty's liability limit for UIM coverage. Because we construe ambiguities in favor of coverage, our conclusion that the Ginders have $200,000 in available UIM benefits remains.

¶ 16.    In sum, this case is controlled by the terms of General Casualty's declarations page and policy. Unlike *Krech*, the declarations page here uses the phrase "split limit liability" which means that General Casualty's limit of liability for any one person is the sum of the limits of liability shown in the declarations page for each person for UIM coverage. We interpret this language as permitting the aggregation of benefits in determining General Casualty's limit of liability. We therefore conclude that the circuit court's decision finding UIM coverage was proper.

*By the Court.*—Order affirmed.