Rural Mutual Insurance Company, Plaintiff-Respondent,

v.

Tracy Welsh and Wayne Sheffield, Defendants-Appellants,

Keith Welsh and Betty Welsh, Defendants-Co-Appellants.

Court of Appeals

*No. 00–2699. Submitted on briefs April 18, 2001.—Decided July 26, 2001.*

2001 WI App 183

(Also reported in 633 N.W.2d 633.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael Riley* and *Alexander S. Kammer* of *Atterbury & Riley, S.C.*, Madison.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of *Thomas T. Schrader*, Bloomington.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert G. Wixson* of *Winner, Wixson & Pernitz*, Madison.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Tracy Welsh, Wayne Sheffield, and Keith and Betty Welsh appeal an order granting summary judgment to Rural Mutual Insurance Company. The order declared that insurance policies which Rural had issued to Keith and Betty do not provide liability coverage for their alleged negligence leading to the death of Skylar Sheffield, Tracy's and Wayne's son. On this de novo review, we conclude that the policies do not unambiguously exclude coverage for the occurrence at issue,[1] and that a reasonable insured would expect coverage on the present facts under the terms of the policy. Accordingly, we reverse the appealed order and remand for the entry of judgment in favor of Keith and Betty Welsh, declaring coverage for the claim relating to Skylar's death.

---

[1] Under the definitions contained in the insurance policies, an "occurrence" for purposes of the liability coverages provided by the policies "means an accident."

## BACKGROUND

¶ 2. The parties filed cross-motions for summary judgment, and the facts relevant to this appeal are undisputed. Eleven-year-old Skylar Sheffield died while operating a forklift on or near a roadway in the vicinity of a farm owned by Keith and Betty Welsh. Keith Welsh owned the forklift and allowed Skylar to operate it without supervision. Rural had issued both a Farmowners and a Homeowners insurance policy to the Welshes, and liability coverages under both policies were in effect on the date of Skylar's fatal accident.

¶ 3. Rural filed a declaratory judgment action, naming its insureds and Skylar's parents as defendants. Rural sought a determination that the Homeowners and Farmowners policies it issued to the Welshes did not provide coverage for their alleged negligence related to Skylar's death. Skylar's parents filed a counterclaim against Rural and a cross-claim against the Welshes, who in turn counterclaimed against Rural, seeking a declaration of coverage. Both Rural and the Welshes moved for summary judgment. The court granted Rural's motion and denied the Welshes'. The Welshes and Skylar's parents appeal.[2]

## ANALYSIS

¶ 4. We review a circuit court's grant of summary judgment de novo, using the same methodology as the trial court. *M&I First Nat'l Bank v. Episcopal Homes Mgt., Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct.

---

[2] Except where it is necessary to separately identify them, we will subsequently refer to all defendants-appellants, collectively, as the Welshes.

App. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 496–97; *see also* WIS. STAT. § 802.08(2) (1999–2000).[3]

¶ 5. The issue is whether Rural's policies provide coverage for an occurrence involving a "motorized vehicle" on the present facts. The interpretation of an insurance contract presents a question of law which we decide de novo. *Oaks v. American Family Mut. Ins. Co.,* 195 Wis. 2d 42, 47, 535 N.W.2d 120 (Ct. App. 1995). Our goal in interpreting the language of the policy is to ascertain and carry out the intention of the parties. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1 (1994). Policy provisions tending to limit coverage are generally construed against the insurer. *Bartel v. Carey,* 127 Wis. 2d 310, 314, 379 N.W.2d 864 (Ct. App. 1985). However, "a policy may not be construed to bind the insurer to a risk which it did not contemplate and for which it received no premium." *Id.* at 314–15.

¶ 6. The supreme court has very recently summarized the proper approach for a court to take when it is called upon to interpret language in an insurance policy:

> An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it. . . . Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law.

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

*Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150 (citations omitted). The court has also provided guidance regarding ambiguities which may arise from the language of a policy:

> We construe ambiguities in coverage in favor of the insured and narrowly construe exclusions in coverage against the insurer. . . . The language of an insurance policy is ambiguous when it is "susceptible to more than one reasonable construction." . . . If the language in an insurance policy is ambiguous, we interpret that language by trying to determine "what a reasonable person in the position of the insured would have understood the words of the policy to mean." . . . In addition, the interpretation of language in an insurance policy should advance the insured's reasonable expectations of coverage.

*Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916 (citations omitted).

¶ 7. We thus begin by examining the policy language relevant to the coverage dispute. The parties agree that the forklift at issue is a "motorized vehicle," which is defined in the policies as "[a]ny self-propelled vehicle (assembled or unassembled, regardless of horsepower, number of wheels or method of surface contact) including parts and equipment." Two subsets of "motorized vehicles" are also defined by the policies: "motor vehicle," and "recreational motor vehicle." There is no dispute that the forklift involved in Skylar's death is neither a "motor vehicle" nor a "recreational motor vehicle," as those terms are defined in the policies.[4]

---

[4] A "motor vehicle" is defined by the policies as a "motorized vehicle, trailer or semi-trailer designed for travel on public roads and subject to licensing," while "recreational motor ve-

¶ 8. Both Rural policies begin their liability coverage sections with the following broad grant of liability coverage:

> **We** will pay, up to **our** limit of liability, all sums for which an **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. . . .

In the Farmowners Policy, this grant of liability coverage is set forth under the heading, "**PRINCIPAL LIABILITY AND MEDICAL EXPENSE COVERAGES**," followed by the designation "**Coverage A, Farm Public Liability and Personal Liability**." In the Homeowners policy, the same granting language appears as "**Coverage E – Personal Liability**." It is undisputed that: (1) *none* of the exclusions specifically applicable to Coverage A or Coverage E relate to the use of "motorized vehicles"; (2) there is no exclusion for "motorized vehicles" under the General Exclusions applicable to all liability coverages in the Farmowners Policy; and (3) the only reference to "motorized vehicles" in the General Exclusions from liability coverage in the Homeowners Policy is a provision precluding payment if the motorized vehicle is being "used for racing," which is not at issue in this case.

¶ 9. Given the foregoing, we conclude that, absent any other provisions in the policies to the contrary, the "principal" liability coverage of each policy plainly encompasses the Welshes' potential liability for the circumstances surrounding Skylar's death. Rural does not contend otherwise, but argues that "the general terms of the policy must give way so as to give meaning to the

hicle" means "a motorized vehicle (other than a motor vehicle as defined above), trailer or attached apparatus designed or used for recreation, vacation or leisure time activities."

specific provisions" contained in each policy under the heading "**SUPPLEMENTAL LIABILITY AND MEDICAL EXPENSE COVERAGES**." In other words, although Rural does not explicitly concede that coverage would exist under the principal liability coverage provisions if the "supplemental coverages" were absent, its argument effectively does so by omission.

¶ 10. We must next examine, therefore, the policy language which Rural argues impliedly excludes coverage in this case. It is the following:

**SUPPLEMENTAL LIABILITY AND MEDICAL EXPENSE COVERAGES**

This policy provides the following Supplemental Coverages. They are subject to the **terms** of the Principal Liability and Medical Payments coverages. . . .

. . . .

**4. Incidental Motorized Vehicle Coverage: We** will pay for **bodily injury** or **property damage** which:

a. occurs on the **insured premises** and results from the ownership, maintenance, use, loading or unloading of:

1) **motorized vehicles** not subject to motor vehicle registration because of their type of use; or

. . . .

3) except **we** will not pay for **bodily injury** or **property damage** which occurs on approaches and access ways immediately adjoining the **insured premises.**

. . . .

c. occurs anywhere and results from:

. . . .

> 3) **motorized vehicles** not subject to motor vehicle registration because of their type or use, but only while used in the **insured's** own **farming** operations. . . .

¶ 11. These paragraphs specifically grant liability coverage for bodily injury or property damage resulting from the use of motorized vehicles when injury or damage occurs (1) on the insured's premises, or (2) when the vehicle is used in the insured's own farming operations. The Welshes concede that these "supplemental coverage" provisions do not provide coverage for the accident at issue, but argue that they are, at the very least, inconsistent with the broad grant of "primary" liability coverage, from which the use of "motorized vehicles" is neither generally nor specifically excluded. The question we must decide, then, is whether the "supplemental coverage" of certain occurrences involving motorized vehicles creates an exclusion from principal liability coverage for all other occurrences involving motorized vehicles. We conclude that it does not.

¶ 12. Rural asserts, correctly, that, in construing and interpreting these insurance policies, we must consider the policies as a whole and attempt to give each of its provisions the meaning the parties intended. *See Schaefer v. General Cas. Co.*, 175 Wis. 2d 80, 84, 498 N.W.2d 855 (Ct. App. 1993). Thus, we must attempt to reconcile the terms of these policies which (1) apparently grant coverage under broad language describing primary liability coverage, (2) do not remove primary liability coverage via any express exclusion for motorized vehicles, but (3) provide for supplemental coverage of motorized vehicles under limited circumstances. As is often the case in disputes over the meaning of

contracts or statutes, both parties maintain that the language of the policies "plainly" supports their competing interpretations.

¶ 13. We agree with Rural that it would be reasonable to conclude the policy does not cover Skylar's accident because the language of the supplemental coverage, which grants coverage for accidents involving motorized vehicles in certain circumstances, would be unnecessary if accidents involving them in all circumstances were covered under the primary coverage granted by the policy. On the other hand, the Welshes' reading of the policy is also reasonable. The policies distinguish "motor vehicles" as a subset of "motorized vehicles," and both policies expressly exclude from liability coverage "loss . . . [r]esulting from the ownership, operation, maintenance, use, loading or unloading of . . . any **motor vehicle** . . . except as provided in the Supplemental Coverages of this form." No similar exclusion referring to the need to examine supplemental coverages to determine the extent of coverage for "motorized vehicles" is to be found in either policy. The one reference to "motorized vehicles" in either policy's express exclusions applies only to motorized vehicles "while used for racing." It would thus be reasonable to read the policies as providing liability coverage for any occurrence involving a motorized vehicle that is not also a motor vehicle, such as a forklift, so long as it was not being "used for racing."

¶ 14. We conclude, therefore, that on the issue in dispute—coverage for the circumstances of Skylar's death—the policies are ambiguous, in that they are "susceptible to more than one reasonable construction." *Taylor*, 2001 WI 93 at ¶ 10. Under the guidance set forth in *Taylor*, we are to "construe ambiguities in coverage in favor of the insured," *id.*, which some might

read to mean our task is at an end. *Taylor* also instructs, however, that if policy language is ambiguous, we should try "to determine 'what a reasonable person in the position of the insured would have understood the words of the policy to mean,' " and seek to "advance the insured's reasonable expectations of coverage." *Id.* (citation omitted).

¶ 15. It is not entirely clear how much additional inquiry is required in order to satisfy this latter standard, given our conclusion that the insurer and the insured have each advanced reasonable interpretations of the policy provisions regarding occurrences involving motorized vehicles that are neither motor vehicles nor used in racing. We conclude, however, that the emphasis on the "reasonable expectations" of an insured in resolving policy ambiguities, as expressed in *Taylor* and many of the cases which precede it, serves as a reminder that we are not to "bind the insurer to a risk which it did not contemplate and for which it received no premium." *Bartel*, 127 Wis. 2d at 314. That is, even where we conclude an ambiguity exists in the language of an insurance policy, we will not permit an insured to seize upon it to obtain coverage unless we are also convinced that such a result was within the insured's "reasonable expectations of coverage."

¶ 16. We conclude that a reasonable insured would expect the policies Rural issued to the Welshes to provide coverage for the occurrence at issue. We reach this conclusion based on the structure of the policy as well as its language. The liability coverage sections of each policy begin with a broad general grant of coverage: "We will pay, up to our limit of liability, all sums for which an insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies." This grant of

427

coverage is followed by specific exclusions from Coverage A (Farmowners policy) and Coverage E (Homeowners policy), as well as a statement that "[i]n addition to the General Exclusions in this form which are applicable to all coverages, specific exclusions apply to each coverage as stated after the explanation of each coverage." As we have noted, however, none of the exclusions specific to Coverages A and E, nor any of the General Exclusions in either policy, mention losses arising from the use of "motorized vehicles," except when "used for racing."

¶ 17.　We conclude that it would not be reasonable to expect an insured, after he or she had consulted the foregoing policy provisions and found no exclusion from or limitations on coverage relating to motorized vehicles not used for racing, to then consult the "supplemental coverages" on the chance that an exclusion from general liability coverage might be implied or inferred from these additional, more specific grants of coverage. Rural argues that specific provisions of an insurance contract control over general provisions, a proposition with which, as a general rule of construction, we have no quarrel. However, we cannot agree that, absent an exclusionary reference over to the supplemental coverages (such as exists for "motor vehicles"), a reasonable insured would expect that provisions promising "supplemental coverage" operate to take something away from coverage granted elsewhere in the policy.[5]

---

[5] If Skylar's death had resulted from his use of a "recreational motor vehicle," we might be more inclined to accept Rural's interpretation that its policies provided no coverage. Although the provision in the General Exclusions removing from liability coverage "[a]ny **motor vehicle** or watercraft, except as provided in the Supplemental Coverages of this form" would not strictly apply to a "recreational motor vehicle" (see

428

¶ 18. In short, the policy as a whole, which Rural acknowledges we must consider, does not support Rural's interpretation. Since we are to "narrowly construe exclusions in coverage against the insurer," *Taylor*, 2001 WI 93 at ¶ 10, we cannot imply or infer the existence of an exclusion that is not expressed at all in the policy, as Rural would have us do.

## CONCLUSION

■

¶ 19. For the reasons discussed above, we reverse the appealed order and remand for the entry of judgment in favor of Keith and Betty Welsh, declaring coverage for the claim relating to Skylar's death.

*By the Court.*—Order reversed and cause remanded.

---

footnote 4, above), an argument could be made that a reasonable insured would construe the term motor vehicle to include a recreational motor vehicle as part of the exclusion because recreational motor vehicles are granted only limited coverage in the supplemental coverage portion of the policy. The forklift in this case, however, is neither a "motor vehicle" nor a "recreational motor vehicle," and there is simply no similar exclusionary reference over to the supplemental coverages which could reasonably apply to it.