Amanda KENDZIORA, Chris Kendziora, Shawn Kendziora and Ashley Kendziora, Plaintiffs-Appellants,

WPS and Community Health Plan of Wisconsin, Plaintiffs,

v.

CHURCH MUTUAL INSURANCE COMPANY, Sentry Insurance, a mutual company, and Cities & Villages Mutual Insurance Company, Defendants,

EMCASCO INSURANCE COMPANY, Defendant-Respondent,

ST. PAUL'S LUTHERAN CHURCH, a/k/a St. Paul's Evangelical Lutheran Church of West Allis, Wisconsin, City of West Allis, Judy Whitehaus and Kim Kendziora, Defendants.

Court of Appeals

*No. 02–1689. Submitted on briefs January 7, 2003.—Decided March 18, 2003.*

2003 WI App 83

(Also reported in 661 N.W.2d 456.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Colleen Bero-Lehmann* of *Kmiec Law Offices*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mark J. Mingo* and *Eugene M. LaFlamme* of *Mingo & Yankala, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Amanda, Chris, Shawn and Ashley Kendziora appeal from an order for summary judgment granting declaratory judgment in favor of EMCASCO Insurance Company (EMCASCO). The Kendzioras claim that the trial court erred when it ruled that the underinsured motorists vehicle provisions of their automobile liability policies were not ambiguous, thereby denying them underinsured motorists coverage. Because the underinsured motorists coverage provisions of their EMCASCO policies were unambiguous and precluded stacking, we affirm.

## I. BACKGROUND

¶ 2. This appeal has its genesis in an accident that occurred on September 10, 1998, at the intersection of South 79th Street and West Lincoln Avenue in the City of West Allis. Judy Whitehaus was driving her motor vehicle through the intersection and struck three-year-old Amanda, who was walking in the crosswalk under

278

the guidance of her mother, Kim Kendziora. As a result of the accident, Amanda sustained severe cranial injuries.

¶ 3. At the time of the accident, Whitehaus had an automobile insurance policy with Sentry Insurance that contained liability limits of $150,000 per person and $300,000 per accident. Because Amanda's claimed injuries and damages exceeded the limits of liability in Whitehaus's policy, the Kendzioras looked to the underinsured motorists coverage provisions contained in two automobile insurance policies they purchased from EMCASCO to insure a 1997 Chevrolet van and a 1990 Eagle Premier. EMCASCO moved for a declaratory judgment and for summary judgment, absolving it of any responsibility under the underinsured motorists vehicle provisions of the policies with the Kendzioras. The trial court granted the summary judgment ruling that EMCASCO's automobile policy coverage was not triggered because Whitehaus's vehicle was not an underinsured motor vehicle as defined in the Kendziora policies. The Kendzioras now appeal.

## II. DISCUSSION

¶ 4. The Kendzioras claim that the trial court erred in declaring the policy provisions relating to underinsured coverage to be clear and unambiguous. They contend that the UIM provisions are ambiguous and, therefore, should be construed in their favor. For reasons to be stated, we are not convinced.[1]

---

[1] In this lawsuit, the plaintiff, Amanda Kendziora, and other members of her family, filed claims against her mother Kim Kendziora, Ms. Whitehaus, and various other potentially responsible entities and insurance companies seeking compensation for her alleged bodily injuries. Amanda's siblings filed

## A. *Standards of Review.*

¶ 5. We review an order for summary judgment independently, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We do value any analysis that the trial court has placed in the record. We shall affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2001–02).[2]

¶ 6. A motion for summary judgment may be used to address issues of insurance policy coverage. *Calbow v. Midwest Sec. Ins. Co.*, 217 Wis. 2d 675, 679, 579 N.W.2d 264 (Ct. App. 1998). When determining insurance coverage, we shall apply the same rules that are applied to contracts generally. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990). Insurance contracts should be interpreted and applied according to their unambiguous language. *American Family Mut. Ins. Co. v. Powell*, 169 Wis. 2d 605, 608, 486 N.W.2d 537 (Ct. App. 1992). Contract language is only considered ambiguous if it is susceptible to more than

claims for emotional distress, and impleaded their father, Chris Kendziora, in asserting derivative claims for loss of society and companionship. The Kendzioras claim that there is additional coverage provided in the underinsured motorists coverage included in their personal automobile insurance policies. This appeal concerns only this latter claim.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

one reasonable interpretation. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150.

¶ 7. Any ambiguities in the language of an insurance contract must be construed in favor of the insured. *Smith*, 155 Wis. 2d at 811. When the language in an insurance contract is unambiguous, courts shall apply the language of the policy and not engage in any construction of such language. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916.

¶ 8. Policy provisions tending to limit coverage are generally construed against the insurer; however, a policy may not be construed to bind an insurer to a risk it did not contemplate and for which it received no premium. *Bartel v. Carey*, 127 Wis. 2d 310, 314–15, 379 N.W.2d 864 (Ct. App. 1985).

*B. Pertinent Policy Provisions.*

¶ 9. Relevant to our analysis of whether the underinsured motorists coverage agreement of the EMCASCO policies is ambiguous are six provisions, which we now set forth.

¶ 10. EMCASCO's Underinsured Motorists Coverage endorsement in the Kendziora policies define an underinsured motor vehicle as:

> [A] land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage.*

(Emphasis added.)

¶ 11. The underinsurance agreements provide:

281

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

¶ 12. The policies contain an amendment to the Underinsured Motorists Coverage endorsement section, entitled "Split Underinsured Motorists Limits," which provides in part:

The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.** "Insureds;"

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

¶ 13. The endorsement defines "insured" as:

**1.** You or any "family member".

**2.** Any other person "occupying" "your covered auto".

282

The policy defines "bodily injury" as "bodily harm, sickness or disease, including death that results."

¶ 14. The policy declarations page contains a heading, "ADDITIONAL COVERAGES (SEE EN-DORSEMENT)." Under this heading the following is listed:

### LIMIT OF LIABILITY

. . . .

UNDERINSURED MOTORISTS

BODILY INJURY $100,000 EACH PERSON 8.00
$300,000 EACH ACCIDENT INCLUDED.

¶ 15. Attached to the declarations page are two schedules entitled, "PERSONAL AUTO VEHICLE SCHEDULE," one listing a "1997 CHEV G20 VAN" and the other a "1990 EAGL PREMIER LX SEDAN 4D," which state that underinsured motorists coverage has been purchased in the amount of $4.00 for each vehicle.

*C. Analysis.*

¶ 16. The Kendzioras contend that the $100,000 limit of underinsured motorists coverage on each of the two vehicles under the policies may be "stacked" or aggregated so that the limit of underinsured motorists coverage is $200,000, thereby making the Whitehaus vehicle, whose limit of coverage is $150,000, an "under-insured" vehicle.

¶ 17. To arrive at this favorable conclusion, the Kendzioras claim the existence of "ambiguity" in the underinsurance policy provisions. The Kendzioras' claim of "ambiguity" is based upon the following pre-mises: (1) the definition of underinsured motor ve-

hicle provided in the policies is ambiguous; and (2) other terms and provisions relating to the underinsured motorists coverage add to the ambiguity created by the definition. We disagree.

¶ 18. This case presents a factual variation from other UIM ambiguity cases considered by this court. Under the facts here, we decide for the first time whether the underinsured motorists provision in the insured's policies are ambiguous when the insured is a pedestrian, and neither of the insured's vehicles is involved in the accident. Although the facts are slightly different, our analysis of the issue is consistent with *Smith* and *Taylor*.

### 1. Definition is Not Ambiguous.

¶ 19. For an examination of the Kendzioras' claim of ambiguity, we start with the declarations page of their EMCASCO policies to ascertain what types of coverage the Kendzioras purchased. A reading of the declarations page reveals coverage for bodily injury liability, property damage liability, medical payments, uninsured motorists bodily injury, and automobile damage from collision and other than collision. As additional coverage, the policies list "underinsured motorists bodily injury." There is no dispute that the limit of liability is $100,000 for each person and $300,000 for each accident.

¶ 20. We next examine the basic definition of an underinsured motor vehicle as contained in the Underinsured Motorists Coverage endorsement. As noted above, the definition reads:

> [A] land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

■

¶ 21. In *Smith*, our supreme court reviewed the following definition of an underinsured motor vehicle:

a land motor vehicle ... to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

*Smith*, 155 Wis. 2d at 811 (emphasis added). The court concluded that the definition was clear and unambiguous. *Id.* More recently in *Taylor*, the court reaffirmed its *Smith* decision relating to the clarity of the definition of an underinsured vehicle, and implied that, to be deemed unambiguous, the definition of an underinsured vehicle need not be identical to that in *Smith*. *Taylor*, 2001 WI 93 at ¶ 13. Consistent with this caselaw, we conclude that the definition of an underinsured vehicle in the EMCASCO policies is unambiguous as supported by case law.[3]

¶ 22. Because the Whitehaus policy with Sentry has limits of liability of $150,000 for each person and $300,000 for each accident, it provides greater coverage than the EMCASCO underinsured coverage of $100,000

---

[3] The Kendzioras contend that the decisions in *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990) and *Taylor v. Greatway Ins. Co.*, 245 Wis. 2d 134, 628 N.W.2d 916 (2001), are not determinative authority for three reasons: (1) the decisions do not involve a question of stacking; (2) the specific facts of the case; i.e. the *Smith* vehicle was involved in the accident, unlike in this case; and (3) neither case involved the use of a combined declarations page. We conclude that none of these facts has any bearing on the legal conclusion that the definitional language of an underinsured motor vehicle as contained in the EMCASCO policy is unambiguous. Hence, no further analysis is warranted.

for each person and $300,000 for each accident and therefore, the EMCASCO underinsurance coverage is not triggered.

## 2. Other Terms in Policy do Not Create Ambiguity.

### a. Combined Declarations Page.

¶ 23. The remaining question is whether the unambiguous definition becomes ambiguous in the context of the whole policy. This is a question that is being presented repeatedly to the appellate courts, and one that must be decided on the individual facts of each case.[4] The Kendzioras contend that the combined nature of the declarations page creates ambiguity. The declarations page states that the total premium paid for

[4] In *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223, the supreme court held that a reducing clause was unenforceable because the policy as a whole was ambiguous, citing, in particular, a policy attachment characterizing UIM coverage as the amount available when a tortfeasor's liability is insufficient to cover the damages incurred. *Id.* at ¶¶ 7, 55. Thus, the policy, as a whole, in *Badger Mut.* was ambiguous because the attachment suggested the full UIM policy limit was available and the reducing clause stated that the UIM limit would be reduced by any liability amount received from the tortfeasor. *Id.* at ¶ 59.

*Badger Mut.* is distinguishable from this case because the Kendzioras' policy did not characterize UIM coverage as excess coverage to be applied above and beyond the liability amounts paid by the tortfeasor. Rather, the UIM provisions suggest that the purpose of this coverage is "solely to put the insured in the same position he would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 18, 236 Wis. 2d 113, 613 N.W.2d 557.

the underinsured coverage is $8.00. The Kendzioras concede that the $8.00 is the total cost for two $4.00 premiums for underinsured coverage for two vehicles. There is no language on the declarations page suggesting that because the two separate premiums were added together so that the total dollar amount could be listed, the policyholder could stack the UIM limits from the two policies to double the extent of coverage. To accept the Kendzioras' argument, we would have to hold that because the declaration page lists a single $8.00 premium, instead of two $4.00 premiums, the UIM coverage available, which is listed as $100,000 for each person and $300,000 for each accident, can actually be doubled to permit a total coverage of $200,000 for each person and $600,000 for each accident. Such an argument is absurd and must be rejected.

¶ 24. The declarations page also sets forth, next to the Additional Coverages section, a bracket containing a directive, "(See Endorsement)," referring to the underinsured endorsement of the policy. The endorsement sets forth an explanation and definition of certain terms relating to the underinsured motorists coverage purchased by the Kendzioras. On a page in front of the endorsement, there is an amendment to the endorsement, "Split Underinsured Motorists Limits," which defines the limits of liability as: "The first paragraph of the Limit of Liability provision in the Underinsured Motorists Coverage Endorsement is replaced by the following[.]" The "Split Underinsured Motorists Limits" language is clearly incorporated into the Underinsured Motorists Coverage Endorsement.

¶ 25. Thus, the declarations page directs the insured to read the endorsement in conjunction with the declarations page. A reasonable insured would follow such direction and refer to the Underinsured Motorists

Coverage Endorsement, and then to the "Split Underinsured Motorists Limits" amendment, to understand the coverage limits available. Having engaged in that exercise, a reasonable insured could only conclude that the EMCASCO underinsured motorist liability limit is capped at $100,000 for each person, and $300,000 for each accident. The language referred to clearly states that the limit of liability listed is the most that will be paid, regardless of the number of insureds, claims, vehicles or premiums shown in the declarations or vehicles involved in the accident. Consequently, it leaves no room for stacking the UIM limits simply because the Kendzioras had more than one policy or because the UIM premiums were totaled into a single amount.

### b. No Express Prohibition.

¶ 26. The Kendzioras claim that because "stacking" is not expressly prohibited, it should be allowed. We reject this assertion. A policy that intends to prohibit stacking does not have to include any "magical language" or "parrot" the language of WIS. STAT. § 632.32(5)(f). *Hanson v. Prudential Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 370, 591 N.W.2d 619 (Ct. App. 1999).

¶ 27. A review of the "Split Underinsured Motorists Limits" amendment to the Underinsurance Motorists Coverage endorsement not only states that the EMCASCO maximum liability shall not exceed the limit of liability stated in the declarations page, but further explicates the limit by stating: "This is the most we will pay regardless of the number of . . . [v]ehicles or

288

premiums shown in the Declarations . . . ." The policy, therefore, clearly indicates that stacking is not permitted.

### c. Alleged Inconsistent Policy Provisions.

¶ 28. The Kendzioras claim that, for several reasons, the declarations page and several schedules are inconsistent or are in conflict with one another thereby contributing to ambiguity. Again, we are not persuaded.

¶ 29. The "Split Underinsured Motorists Limits" amendment clearly states that the maximum liability shall not exceed the limit of liability shown in the schedules or in the declarations. This provision is phrased in the disjunctive. There is no expression of the limit of liability in the schedules. Rather, the Personal Auto Vehicle Schedule lists two $4.00 premiums paid for the 1997 Chevrolet van and the 1990 Eagle Premier. The declarations page is the only place where the underinsured limits are set forth. We conclude that this does not constitute an inconsistency.

¶ 30. The "Split Underinsured Motorists Limits" amendment states that either the schedules or the declarations must list the limit of liability for an underinsured motorist claim. Again, the requirement is expressed in disjunctive terms. Thus, leaving the limits of liability on the schedules blank does not create inconsistency because the limits are stated on the declarations page.

### d. Case Law.

¶ 31. To further bolster their ambiguity claim, the Kendzioras cite *Ginder v. General Cas. Co. of Wis.*, 2000 WI App 197, 238 Wis. 2d 506, 617 N.W.2d 857. *Ginder*,

they assert, advances their argument that a conflict between a "split limit liability" provision, which allowed stacking, and another provision, which specifically precluded stacking, created sufficient ambiguity to be resolved in favor of the insured. They argue that the *Ginder* policy had substantially the same language as the alleged anti-stacking provision contained here in the EMCASCO policy; i.e. "The maximum limit of liability is the most [that] we will pay regardless of the number of . . . [v]ehicles or premiums shown in the Declarations." *Id.* at ¶ 15. They then reason that just as an anti-stacking provision in *Ginder* did not defeat the language in another section, which suggested stacking could occur, the same provisions in the EMCASCO policy should not defeat the declarations page, which also created ambiguity allowing for stacking.

¶ 32. A close examination of the *Ginder* policy's "Split Limit Liability" provision, however, demonstrates the fallacy of this argument. First, the "Split Limit Liability provision existing in *Ginder* did not suggest "stacking" could occur, but expressly provided that the liability limit for one person is *"the sum of the liability limits* shown for each person and because there is coverage for two vehicles, the sum total is $200,000." (Emphasis added.) Such a provision does not exist in the EMCASCO policy. Second, as we have already concluded, there is no reasonable basis to conclude that "stacking" can occur based on a reading of the declarations page. To the contrary, the EMCASCO policy expressly prohibits "stacking." Thus, the Kendzioras' argument fails.

¶ 33. The essence of The Kendzioras' "stacking" claim is that the policy's declarations page reflects that two premiums were paid for underinsured motorist coverage. Because the declarations page reflects that

fact, the coverage limits can be aggregated. The Kendzioras' interpretation is not reasonable given the "Split Underinsured Motorists Limits" provision.

### e. Two or More Policies Provision.

¶ 34. Next, the Kendzioras argue that it would be improper to utilize the "Two or More Auto Policies" provision contained in the EMCASCO policy to support the trial court's conclusion that the coverage for the two cars cannot be "stacked."[5] The provision reads:

TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

¶ 35. The Kendzioras set forth two bases in support of this contention. First, relying on *Rural Mutual Ins. Co. v. Welsh*, 2001 WI App 183, 247 Wis. 2d 417, 633 N.W.2d 633, they argue that it is unreasonable to expect them to read the entire policy, and instead that they should be allowed to rely only on the UIM provisions. In *Rural*, we were asked to decide whether a supplemental coverage section of a liability policy covering certain occurrences involving motorized vehicles created an exclusion from general liability coverage for all other occurrences involving motorized vehicles. We held that ambiguity existed when reading the two types of coverage and consequently concluded that it would not be

---

[5] This argument relating to the "Two or More Auto Policies" was not addressed in the trial court's written decision. Nevertheless, because the parties raised the issue and cited authority for their respective positions without objection, we have chosen to examine it.

reasonable to expect an insured, after having consulted the general policy provisions and finding no exclusion from or limitations on coverage, to then consult the "supplemental coverages on the chance that an exclusion from general liability coverage might be implied or inferred from these additional, more specific grants of coverage." *Id.* at ¶ 17.

¶ 36. The Kendzioras claim that their situation is similar to that of the insured in *Rural* in that they consulted the underinsured motorists section of the policy to determine their coverage. The underinsured motorists section referred them to the declarations page and appeared to indicate that they had coverage. Therefore, they conclude it is unreasonable to expect them to search through the entire policy on the chance that some other section may exclude coverage, especially where the section relied upon by EMCASCO was not referenced in the underinsured motorists section. Further, they claim the "Two or More Auto Policies" section is in conflict with the declarations page, thus creating an ambiguity between the sections, which must be resolved in favor of coverage. We reject these arguments.

¶ 37. We concluded in *Gragg v. American Family Mutual Ins. Co.*, 2001 WI App 272, ¶ 11, 248 Wis. 2d 735, 637 N.W.2d 477, that the "Two or More Cars Insured" clause is unambiguous and it can be reasonably understood to preclude stacking. Further, unlike the clause in question in *Rural*, the "Two or More Auto Policies" section is not in a supplement to the policies, but is located in Part F-General Provisions. This anti-stacking provision is not qualified in any manner and quite clearly applies to the entire policy. Moreover, because the declarations page defines the highest appli-

cable limit of liability of any one policy, it could hardly be held to be in conflict with the "Two or More Auto Policies" section.

¶ 38. The Kendzioras' second basis for this claim is their contention that the "Two or More Auto Policies" section creates illusory coverage by requiring an insured to purchase two underinsured motorists policies, but then refusing to provide coverage under both of them. We are not persuaded.

¶ 39. The $8.00 charge as appears on the declarations page was the total amount consisting of two $4.00 premiums for underinsured motorists coverage, for each of the motor vehicles named in the policy. By the payment of each premium, both of the respectively described vehicles were placed within the scope of the coverage provided. Moreover, the legislature has specifically provided that an insurance company may enforce the provision at issue here when the underinsured individual is a pedestrian. *See* WIS. STAT. § 632.32(5)(g):

> A policy may provide that the maximum amount of uninsured or underinsured motorist coverage available for bodily injury or death suffered by a person who was not using a motor vehicle at the time of an accident is the highest single limit of uninsured or underinsured motorist coverage, whichever is applicable, for any motor vehicle with respect to which the person is insured.

We conclude that the UIM coverage is a real, not illusory, benefit. *See also Van Erden v. Sobczak*, 2003 WI App 57, ¶¶ 22–24, 260 Wis. 2d 881, 659 N.W.2d 896 (reaching same conclusion on similar argument).

*By the Court.*—Order affirmed.