Debra A. DEGENHARDT-WALLACE, Plaintiff,

v.

HOSKINS, KALNINS, MCNAMARA & DAY, Ivars
Kalnins, and Great American Insurance
Company, Defendants-Appellants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Intervenor-Respondent.

Court of Appeals

*No. 03–3091. Submitted on briefs March 18, 2004.—Decided
October 28, 2004.*

2004 WI App 209

(Also reported in 689 N.W.2d 911.)

462

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Ward I. Richter* and *Sheila M. Sullivan* of *Bell, Gierhart & Moore, S.C.*, Madison.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Kara M. Burgos* of *Moen, Sheehan, Meyer, Ltd.*, La Crosse.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This case involves an insurance dispute and requires us to interpret language in an underinsured motorist (UIM) policy that obligates the UIM carrier to pay benefits to its insured only after the underinsured motorist's liability limits "have been exhausted by payment of judgments or settlements." The question is whether the policy's exhaustion requirement can be satisfied by a judgment or settlement with someone other than the alleged tortfeasor.

¶ 2. Hoskins, Kalnins, McNamara & Day, Attorney Ivars Kalnins and Great American Insurance Company (collectively Kalnins) appeal from an order dismissing State Farm Mutual Automobile Insurance Company (State Farm) from this action. In January 1999, Debra Degenhardt-Wallace was involved in an auto accident with another vehicle. Degenhardt-Wallace filed this malpractice action against Kalnins because Kalnins failed to file a personal injury claim against the alleged tortfeasor prior to the expiration of the statute of limitations. Degenhardt-Wallace had an auto insurance policy with State Farm; the policy contained UIM coverage. After State Farm intervened in this malpractice action, the circuit court concluded that the UIM coverage was not triggered by any potential settlement or judgment paid by Kalnins.

¶ 3. Kalnins argues the exhaustion clause in the State Farm policy does not require that a particular party exhaust the policy's liability limits before the UIM coverage is triggered. Kalnins further argues that any ambiguities in State Farm's policy must be construed against State Farm. We conclude that the applicable policy language is ambiguous and thus we must construe this ambiguity in favor of coverage. We therefore reverse the order of the circuit court.

## FACTS

¶ 4. The facts are undisputed. Degenhardt-Wallace and Derrick McCoy were involved in an auto accident on January 5, 1999. Degenhardt-Wallace hired Attorney Kalnins to represent her in a lawsuit against McCoy; however Kalnins failed to file suit before the statute of limitations expired. As a result, Degenhardt-Wallace filed the present action against Kalnins alleging legal malpractice.

¶ 5. At the time of the accident, McCoy was insured by an automobile liability policy through State Farm. That policy had bodily injury liability limits of $50,000. Degenhardt-Wallace also had a policy with State Farm at the time of the accident that provided her with UIM benefits of $100,000.

¶ 6. Kalnins has admitted liability for legal malpractice. However, the parties dispute the amount of damages for which Kalnins may be liable. Kalnins has taken the position that he can 'be liable for no more than $50,000, the amount of McCoy's underlying liability policy, because Degenhardt-Wallace remains eligible for UIM benefits from State Farm for damages exceeding $50,000. The statute of limitations has not yet run on the UIM claim.

¶ 7. The circuit court granted State Farm permission to intervene in this lawsuit. State Farm then brought a motion asking for a declaration that it did not owe UIM coverage to Degenhardt-Wallace, pointing to the following language in the UIM portion of her policy:

THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.

State Farm argued that because this provision requires exhaustion of the limits of "bodily injury liability bonds and policies," UIM coverage was not triggered unless a liability insurer paid the limits itself. Kalnins argued that the clause merely sets the point at which UIM coverage is triggered, i.e. after the insured has received the underlying liability policy limits, and says nothing about the source of those funds. If the provision is meant to convey to the insured that a specific individual or entity must pay the limits, according to Kalnins, then it is ambiguous in that respect and must be construed against the insurer.

¶ 8. At a hearing on September 26, 2003, the circuit court granted State Farm's motion. On October 7, 2003, an order was entered finding that State Farm did not owe UIM coverage to Degenhardt-Wallace and on October 31, 2003, a subsequent order dismissed State Farm from the lawsuit. Kalnins appeals.[1]

---

[1] The circuit court declined to grant a stay of the proceedings between the remaining parties pending resolution of the appeal. Degenhardt-Wallace and Kalnins continue to litigate the issues of whether McCoy is liable for the accident and the extent of Degenhardt-Wallace's injuries.

## DISCUSSION

¶ 9. This case requires us to construe an insurance policy. "When determining insurance coverage, we shall apply the same rules that are applied to contracts generally." *Kendziora v. Church Mut. Ins. Co.*, 2003 WI App 83, ¶ 6, 263 Wis. 2d 274, 661 N.W.2d 456. An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150.

¶ 10. In construing a policy, the first thing a court must do is determine if the disputed language is ambiguous. *Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857. The words of an insurance policy are given their common and ordinary meaning. *Danbeck*, 245 Wis. 2d 186, ¶ 10. Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law. *Id.* This is to avoid rewriting the contract by construction and imposing contract obligations the parties did not undertake. *Id.*

¶ 11. Insurance contract language is ambiguous only if it is susceptible to more than one reasonable construction. *Folkman*, 264 Wis. 2d 617, ¶ 13. We construe such ambiguities against the insurer and in favor of coverage. *Id.*; also *Danbeck*, 245 Wis. 2d 186, ¶ 10.

¶ 12. The policy language in question reads

THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.

Kalnins argues that the language of this clause is ambiguous in that it does not require a particular party exhaust the policy's liability limits before the UIM coverage is triggered. We agree.[2]

¶ 13. The exhaustion clause in the insurance policy sets forth these requirements for UIM coverage: (1) the limits of liability (2) of all applicable bodily injury liability bonds or policies (3) must be used up (4) by payment of judgments or settlements. The phrase "limits of liability" clearly refers to the total amount of liability coverage available under the tortfeasor's bodily injury liability insurance policy. *Id.*, ¶ 14. Here, McCoy carried $50,000 of liability insurance.

■

¶ 14. The phrase "used up" has been used interchangeably with "exhausted." *See State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 90, 251 Wis. 2d 561, 641 N.W.2d 662. The term "exhaust" is defined as "to use up or consume completely; expend the whole

---

[2] In its response brief, State Farm argues that Kalnins has no standing to challenge any provision in the insurance policy because he is neither a party to nor a third-party beneficiary of the insurance contract. However, State Farm did not raise this issue before the circuit court. In general, parties must raise issues for the first time before the circuit court. *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980). If a party does not present an issue before the circuit court, he or she effectively waives the right to assert this issue on appeal. *Id.* Because it failed to raise the issue before the circuit court, State Farm has waived the right to raise the issue before us.

467

of . . . ." *Danbeck*, 245 Wis. 2d 186, ¶ 15, *citing to* RANDOM HOUSE UNABRIDGED DICTIONARY 678 (2d ed 1993). When determining the plain and ordinary meaning of words, we may look to definitions in a recognized dictionary. *Oaks v. American Family Mut. Ins. Co.*, 195 Wis. 2d 42, 48, 535 N.W.2d 120 (Ct. App. 1995). Accordingly, to "use up" the tortfeasor's liability policy limits, the full $50,000 must be expended in total or exhausted completely. *See Danbeck*, 245 Wis. 2d 186, ¶ 15.

¶ 15. Finally, the exhaustion clause specifies the only manner by which exhaustion will trigger the obligation to pay UIM benefits: exhaustion "by payment of judgments or settlements." However, nothing in this clause requires the limits of liability be "used up" by receiving that amount under the bodily injury liability bond or policy. Indeed, the exhaustion clause makes no reference to the source of the judgment or settlement funds.

¶ 16. Kalnins argues that nothing in the exhaustion clause mandates that the liability limits to be exhausted must be paid by a particular party before UIM is triggered. According to Kalnins, if Degenhardt-Wallace receives a payment from a settlement or judgment of $50,000, then the liability policy limits will have been "used up."

¶ 17. Conversely, State Farm argues that the plain language of the policy requires payment from the tortfeasor's liability policy, as the language requires the limits of all bodily injury liability bonds or policies be exhausted. According to State Farm, payment by Kalnins' malpractice insurer does not exhaust the limits of a bodily injury liability bond or policy because bodily injury liability insurance does not include legal malpractice insurance.

468

¶ 18. "Can reasonable minds differ? This is the tried and true test for determining ambiguity." *Danbeck*, 245 Wis. 2d 186, ¶ 26 (Bradley, J., dissenting). Reasonable minds can differ here. We conclude that both Kalnins' and State Farm's readings of the policy language are reasonable interpretations and thus the language of the insurance contract language is ambiguous. *See Folkman*, 264 Wis. 2d 617, ¶ 13. Such ambiguities must be construed against State Farm in favor of coverage. *See id.*; *see also Danbeck*, 245 Wis. 2d 186, ¶ 10. If Degenhardt-Wallace receives a payment from a settlement or judgment of $50,000 from Kalnins, then the liability policy limits will have been "used up" and UIM coverage is triggered. We therefore reverse the order of the circuit court.

*By the Court.*—Order reversed.

¶ 19 DYKMAN, J. (*concurring*). So far, this case is about a straw man. His name is "used up." He doesn't have much to do with this case. But, for what it's worth, I agree with the majority that "to 'use up' the tortfeasor's liability policy limits, the full $50,000 must be expended in total or exhausted completely." Majority at ¶ 14. The majority's opinion convincingly beats this straw man into submission, and I agree that its conclusion as to "used up" is correct.

¶ 20. But that's not what this case is about. Though the case began as a legal malpractice action, once State Farm intervened, it became, for the purpose of this appeal, an action by Degenhardt-Wallace against State Farm, her underinsured motorist coverage car-

rier.[1] This appeal is here because Degenhardt-Wallace wants to recover under her UIM coverage, and State Farm is resisting her efforts. The language of Degenhardt-Wallace's policy that State Farm relies on is:

THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS

¶ 21. The crux of the majority opinion is in ¶ 15, where it concludes: "However, nothing in [the exhaustion clause] requires the limits of liability be 'used up' by receiving that amount under the bodily injury liability bond or policy. Indeed, the exhaustion clause makes no reference to the source of the judgment or settlement funds."

¶ 22. This is not true. The source of the judgment or settlement funds must come from applicable bodily injury policies. The disputed sentence is written in the passive voice, but the operative words are: *limits of applicable bodily injury policies are used up by payment or settlement.* It is undisputed that malpractice insurance is not found in a bodily injury policy. Whether the limits of other policies are used up is irrelevant.

¶ 23. I do not know whether McCoy's bodily injury policy is applicable because I am not sure of the meaning of the word "apply" in the context of

---

[1] State Farm Mutual Automobile Insurance Company begins its brief by·asserting that Attorney Kalnins has no standing to challenge a contract to which he is neither a party nor a third party beneficiary. The majority does not address this issue. My conclusion is that Kalnin's standing is irrelevant. This is, for the purposes of this appeal, a dispute between Degenhardt-Wallace and State Farm.

Degenhardt-Wallace's policy with State Farm. The pertinent dictionary definition of "apply" is: "to have relevance or a valid connection." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 57 (10th ed. 1993). If the question is whether Degenhardt-Wallace can recover money from McCoy or his insurance carrier, the answer is, No, McCoy's policy does not have relevance or a valid connection; it does not apply. If the question is whether Degenhardt-Wallace could have recovered from McCoy or his insurer had she timely sued, the answer is, Yes, McCoy's policy is applicable.

¶ 24. Though I believe that "No" is the better answer, it is possible that reasonable people could differ as to the meaning of the phrase "that apply." If McCoy's policy is inapplicable because Degenhardt-Wallace can recover nothing from it, the policy does not "apply" and UIM coverage exists. If McCoy's policy applies because Degenhardt-Wallace could have recovered had she timely sued, the limits of McCoy's policy have not been "used up," and UIM coverage does not exist. The disputed phrase is therefore ambiguous because it "is capable of being understood by reasonably well-informed persons in two or more senses." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 47, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).[2] We are therefore to construe the sentence against State Farm. *See Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d

___

[2] I recognize that an exhaustion clause that omits the words "that apply" is unambiguous. *See Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 13 n.3, 245 Wis. 2d 186, 629 N.W.2d 150. The omission of those words distinguishes *Danbeck*. Even without that distinction, the supreme court has recognized that what is unambiguous in one context may be ambiguous in another. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999).

617, 665 N.W.2d 857 (citation omitted). The result is UIM coverage exists, whether we accept the first meaning or conclude that the sentence is ambiguous.

¶ 25. UIM coverage is designed to be coverage of last resort, but its context and design is limited to the interaction between two or more automobile liability policies. The designers of this coverage never contemplated more than the disputed policy provision provides.

¶ 26. The problem with the majority's analysis is that it never addresses the real issue, which is whether McCoy's bodily injury policy "applies" to this lawsuit. My conclusion is that the best State Farm can show is that the meaning of "that apply" is ambiguous.[3] Accordingly, I would construe those words against State Farm, and conclude that the sentence on which it relies does not prevent Degenhardt-Wallace from recovering under her UIM policy. I therefore respectfully concur.

[3] State Farm may have other reasons why it believes Degenhardt-Wallace cannot recover under her UIM coverage. I do not find those reasons, if they exist, in State Farm's brief.